THE STATE OF OHIO, APPELLEE, *v.* TIMPERIO, APPELLANT.

(No. 52521—Decided
September 28, 1987.)

*John T. Corrigan,* prosecuting attorney, and *George Lonjak,* for appellee.

*Jacob, Rubin & Bensing* and *Russell S. Bensing,* for appellant.

SPELLERBERG, J. Defendant, Martin Timperio, appeals from his conviction on three counts of rape of his three-year-old daughter after the jury had found the defendant guilty.

The indictment as amended states the rapes took place between April 1983 and July 1983.

The defendant was indicted on April 11, 1986, and arraigned on April 24, 1986. A jury trial began July 28, 1986, and lasted until August 1, 1986.

The child testified that her father had vaginal, anal and oral intercourse with her. Anatomically correct dolls were used while the child testified. The child testified that originally she claimed her uncle and his girlfriend were the ones who had molested her, but that she had only stated that to protect her father.

The next witness was Dr. Joyce Lenine-Maccombie, a psychologist who testified as to the series of symptoms sexually abused children exhibit. She stated that she first saw the child October 1, 1984, two years prior to her testimony, that the child exhibited the series of symptoms and that in her opinion the child was sexually abused. Lenine-Maccombie related that the child stated to her that her father threatened to burn the house down if she told anyone about his acts. The doctor further testified that she did not

think the child had been brainwashed, due to the child's age, consistency of the child's story over a period of time, and the child's description of the acts.

The state's next witness was Dr. Irene Bautista who saw and examined the child on July 27, 1983, when the child was brought in at age two and one-half years because of burning and frequency of urination. She stated that the child had no hymen. This witness had no opinion as to whether the child had been sexually abused.

The mother next testified about taking the child to the two doctors.

The defendant's present wife testified that the child was always happy to see the defendant. She further testified that the defendant's penis is large and too big for the child.

The defendant's mother, father and sister testified for the defendant as did the defendant's brother, John, Jr., who testified that he was present when the defendant was informed that another brother had molested his child and, in response, the defendant punched a window.

The defendant testified denying the allegations of the indictment, and stated that he never molested his daughter as he would have ripped her in half. He further testified that the child had been brainwashed.

I

First Assignment of Error

"The trial court erred in permitting the prosecuting attorney to elicit [the child's] testimony through leading questions to the extent that the jury had virtually no opportunity to gauge [her] credibility."

Evid. R. 611 provides, in pertinent part:

"(A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and

presentation effective for the ascertainment of the truth* * *.

"* * *

"(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.* * *"

The defendant failed to object to any questions of the prosecutor to this witness, and failure to object constitutes a waiver. State v. Williams (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364.

Further, the transcript indicates that the prosecutor requested that the child demonstrate what her father had done to her with the use of anatomically correct dolls. See State v. Wagner (1986), 30 Ohio App. 3d 261, 30 OBR 458, 508 N.E. 2d 164.

Finally, Ohio courts have held that a prosecutor is allowed to use leading questions on direct examination where the victim is of tender years, such as a five-year-old victim. State v. Madden (1984), 15 Ohio App. 3d 130, 15 OBR 221, 472 N.E. 2d 1126; State v. Holt (1969), 17 Ohio St. 2d 81, 46 O.O. 2d 408, 246 N.E. 2d 365.

The defendant's cross-examination of said child did not cause the child to change her testimony.

Defendant's first assignment of error is not well-taken.

## II

Second Assignment of Error

"The trial court erred in admitting the testimony of Dr. Joyce Lenine-Maccombie."

The doctor testified she had a bachelor's degree from Kent State University in 1975, a master's degree in psychology in 1978 and a Ph.D. in psychology in 1982. She further testified that she had been practicing in the field of psychology since 1978, was a consultant to the Head Start Program in East Cleveland, worked at the Child Guidance Center in Cleveland, saw patients from age four through adolescence and adult, did her dissertation in the area of rape, co-authored a book on sex abuse for a survey in Summit County, attended numerous workshops, and had supervised cases involving child sex abuse. The doctor related symptoms exhibited by sexually abused children. She testified that she had been treating the victim for two years since 1984, that the victim in the case exhibited symptoms symptomatic of a child who has been sexually abused, and that the history related by the child was significant, as a child of her years did not have the capacity to make up such a story. The doctor qualified as an expert witness. The doctor gave an opinion that the child in this case was sexually abused and gave her basis for arriving at that opinion.

The appellant feels that the court erred in permitting the doctor to testify and abused its discretion in letting the doctor so testify. This court does not agree.

It is permissible to permit an expert to testify for the purpose of helping the jury to assess the credibility of a sexually assaulted child. See State v. Myers (Minn. 1984), 359 N.W. 2d 604, wherein the court permitted a clinical psychologist to testify in the case of a seven-year-old girl on facts similar to those in this case. The Minnesota Supreme Court stated at 609-610:

"There can be no doubt that an indirect effect of that portion of Dr. Bell's testimony was to bolster the complainant's credibility. Much expert testimony tends to show that another witness either is or is not telling the truth. That fact, by itself, does not render the testimony inadmissible. The test is not whether opinion testimony embraces an ultimate issue to be decided by the jury but whether or not the expert's testimony, if believed, will help the jury to understand the evidence or to determine a fact in issue. Moteberg v. Johnson, 297 Minn. 28, 210

N.W. 2d 27 (1973). With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility. In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission. Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts. The nature, however, of the sexual abuse of children places lay jurors at a disadvantage. Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse. If the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility. A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct. As Dr. Bell testified, uncertainty becomes confusion when an abuser who fulfills a caring-parenting role in the child's life tells the child that what seems wrong to the child is, in fact, all right. Because of the child's confusion, shame, guilt, and fear, disclosure of the abuse is often long delayed. When the child does complain of sexual abuse, the mother's reaction frequently is disbelief, and she fails to report the allegations to the authorities. By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant. *See State* v. *Middleton,* 294 Or. 427, 657 P. 2d 1215 (1983)."

See, also, *State* v. *Geyman* (Mont. 1986), 729 P. 2d 475, where the Mon-tana Supreme Court permitted expert testimony for the purpose of helping the jury to assess the credibility of a nine-year-old sexual assault victim who took three weeks to tell about his sexual abuse. The rationale of the court was that jurors do not have common experience with child sexual abuse victims and that the expert testimony assisted the jurors on the subject.

The Oregon Supreme Court in *State* v. *Middleton* (1983), 294 Ore. 427, 657 P. 2d 1215, allowed an expert to explain the amount of stress an intra-family assault can have on a child. The Oregon court felt that an expert helped the jury by explaining the child's bizarre behavior and identifying its emotional antecedents.

In *State* v. *Humfleet* (Sept. 9, 1985), Clermont App. Nos. CA84-04-031 and CA84-05-036, unreported, a social worker interviewed a five-year-old girl who was allegedly sexually abused. On the basis of the social worker's observance of the girl playing with the anatomically correct dolls and her statements, she was allowed to express the opinion that the five-year-old girl had been sexually abused.

Defendant's second assignment of error is not well-taken.

### III

Third Assignment of Error

"The prosecuting attorney's misconduct in closing argument operated to deny the defendant a fair trial."

Appellant objects to the prosecution's closing argument:

"* * * I would have loved to have the doctor, Deborah Sanders, come in here and indicate that there's nothing inconsistent with what the state is claiming happened. It is negative for venereal disease."

This statement was apparently made in response to the defense attorney's comments about the hospital report symbol "∅" meaning "without: negative; no," or "No discharge

noted," referring to Joint Exhibit 1. In addition to Joint Exhibit 1 itself, reference was made several times to the hospital report by different witnesses: Dr. Irene Bautista upon cross-examination and upon redirect, and Andrea Zbydniewski upon cross-examination.

The exhibit and all references to the hospital records were clear that all tests were negative as to any discharge, Chlamydia, or other venereal disease.

The second objection to the prosecutor's closing argument was his comments as to reasonable doubt and his comments about tests of credibility:

"You know, the Judge is going to read you the definition of reasonable doubt.* * *

"You're going to make a decision pertaining to reasonable doubt. A doubt that you would use in the most important of your affairs.

"Well, would buying a car be an important affair? Would you buy a car from this guy? Would you buy a house from this guy—

"MR. GALLAGHER: Objection.

"MR. LONJAK: This is an important affair. You're going to have to —

"THE COURT: Overruled.

"MR. LONJAK: — you're going to have to test his credibility and his testimony as the most important of your own affairs such as chosing a babysitter for your child. Would that be an important affair?"

It is the defendant's contention that these excerpts from the prosecuting attorney's comments did two things: shifted the burden of proof to the defendant and placed upon the defendant the burden of proving himself innocent, beyond a reasonable doubt.

The court in its charge discussed tests of credibility, the burden of proof, opening and closing remarks not being evidence, and the definition of "reasonable doubt."

Upon review of the entire closing argument of the prosecutor, the nature of the testimony, the joint exhibit, and the judge's charge, the defendant's third assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

STILLMAN, P.J., and GEORGE, J. concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District; JOYCE GEORGE, J., of the Ninth Appellate District; and THOMAS R. SPELLERBERG, J., of the Seneca County Court of Common Pleas, sitting by assignment.