The STATE of Ohio, Appellee,

v.

RAMIREZ, Appellant.

[Cite as *State v. Ramirez* (1994), 98 Ohio App.3d 388.]

Court of Appeals of Ohio,
Defiance County.

No. 4–94–3.

Decided Nov. 2, 1994.

*Jeffrey A. Strausbaugh,* Defiance County Prosecuting Attorney, and *Morris J. Murray,* Assistant Prosecuting Attorney, for appellee.

*John P. Goldenetz,* for appellant.

HADLEY, Judge.

Defendant-appellant, Moises Ramirez ("appellant"), appeals from the February 22, 1994 judgment entry of conviction in the Defiance County Court of Common

Pleas for one count of rape, five counts of felonious sexual penetration, seven counts of gross sexual imposition, and one count of sexual imposition pursuant to R.C. 2907.02, 2907.12(A)(1)(b), 2907.05, and 2907.06, respectively.

The appellant was accused of various sex-related offenses by his daughter, Jessica Ramirez ("Jessica"), age fifteen, his niece, Angela Gonzales ("Angela"), age seventeen, and a friend of Jessica's, Rebecca Moore ("Rebecca"), age fifteen. The sexual acts were said to have occurred over a period of time when Jessica and Angela were under the age of thirteen and Rebecca was over the age of thirteen.

Appellant was originally indicted on June 14, 1993 for five counts of rape, five counts of felonious sexual penetration, seven counts of gross sexual imposition, and two counts of sexual imposition. On August 25, 1993, appellant filed a motion to permit psychiatric and psychological examination of Jessica by his own experts. The trial court denied this motion on September 13, 1993 and September 21, 1993.[1] On October 15, 1993, appellant filed a motion for production of all statements made by the victims to any law enforcement officer or social worker. The trial court granted this motion on November 10, 1993.

Appellant submitted a proposed special jury instruction for the definition of "cunnilingus" on January 27, 1994.[2] The court declined to give appellant's instruction and utilized the definition from Ohio Jury Instructions. On January 26, 1994, a jury found appellant guilty of one count of rape, five counts of felonious sexual penetration, seven counts of gross sexual imposition, and one count of sexual imposition.

On February 7, 1994, appellant filed a motion for judgment of acquittal regarding the five felonious sexual penetration convictions. The same day, appellant filed a motion for psychological evaluations of the victims to assist the trial court in determining the appropriate term of imprisonment. The trial court denied both motions on February 8, 1994. Appellant was sentenced on February 14, 1994.

It is from the judgment entry of conviction and sentencing, and the denial of the motions to set aside the jury verdict and to order psychological examinations and evaluations, that appellant asserts the following assignments of error:

---

1. The judgment entry of September 13, 1993 denies this motion and contains the trial court's rationale for refusing to allow the examination. A judgment entry dated September 21, 1993 also denies the motion.

2. This proposed instruction was served on the assistant prosecutor on January 26.

"Assignment of Error No. 1

"The trial court erred in denying defendant's motion for psychiatric and psychological testing of the child witness."

■ In his motion to the trial court, appellant argued for access to one of the witnesses by his expert in order to evaluate the validity of the accusations. Now, in this appeal, appellant continues to assert that "[i]f the [d]efendant has the right to present expert testimony, then the [d]efendant has the right to seek access of his expert to the victim." He cites *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, as well as other cases which followed its rationale, in support of his position.

The decision whether to order a psychological evaluation of a prosecutor's witness is within the sound discretion of the trial court. *State v. Stutts* (Jan. 2, 1991), Lorain App. No. 90CA004879, unreported, 1991 WL 1964. Moreover, "a request to subject an alleged sex abuse victim to a psychological examination seeks an extraordinary order.from the court and should not be granted lightly." *Id.* Therefore, the trial court's decision will be upheld absent an abuse of discretion, which implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148. See, also, *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 434–435, 257 N.E.2d 65, 68, vacated in part on other grounds (1972), 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753 (reiterating deference given to trial court's decision in granting or denying discovery motions).

In *State v. Boston*, the Supreme Court of Ohio held that expert testimony on whether the sexual abuse occurred would aid a jury in reaching its decision.[3] *Id.*, 46 Ohio St.3d at 128, 545 N.E.2d at 1239–1240. The court, however, also found that expert testimony was improper to declare whether the alleged victim's statements were true.[4] *Id.* at 128–129, 545 N.E.2d at 1239–1240. In its rationale, the court stressed the importance of the factfinder's responsibility in determining credibility and veracity. *Id.*

Appellant stated as grounds for his motion: Jessica's extensive examination by social workers and law enforcement officials, her competency to testify and her

---

3. The experts were doctors who had examined the child for diagnosis and treatment. *Id.* at 108–109, 545 N.E.2d at 1222–1223.

4. In a prior case, the Eighth District Court of Appeals permitted expert testimony to assist the jury in assessing a child's credibility. *State v. Timperio.* (1987), 38 Ohio App.3d 156, 528 N.E.2d 594, paragraph one of the syllabus. The court stated that the nature of a child's sexual abuse "places lay jurors at a disadvantage." *Id.* at 159, 528 N.E.2d at 597. We note that this expert had been treating the child for two years. *Id.* at 158, 528 N.E.2d at 596.

competency during the time of the alleged offenses, influential factors and the propriety of methodology used in the investigation, and appellant's right to present expert testimony based on direct evaluation. In his supporting memorandum, appellant focused on the prevalence of false accusations and set forth techniques recommended by various authors for proceeding in these types of cases. He further stated that adjudication in this matter must take into account whether the child was lying or being manipulated and should not be left to an untrained social worker or jury without expert testimony.

The trial court, in its judgment entry of September 13, 1993, found that there was no indication that the exam would likely result in any admissible evidence and that such testimony "which may ultimately go to the credibility of the witness or witnesses would be inappropriate and inadmissible." The court also noted the danger of invading the jury's province in determining the credibility of witnesses.

We acknowledge that experts may testify as explained in *State v. Boston*. Appellant appears to stretch this point to conclude that because experts may be allowed to testify, the trial court must order an alleged victim to undergo a psychological examination from a defendant's expert in the discovery process to determine credibility or veracity.[5] We reject this contention and reiterate that such a motion should not be granted freely.

Based on the record, we cannot find that the trial court's denial of appellant's motion was unreasonable, arbitrary or unconscionable. Appellant's first assignment of error is not well taken and it is overruled.

"Assignment[s] of Error No. 2 and No. 3

"The trial court erred in refusing to allow the defendant's request for a special instruction regarding cunnilingus.

"The trial court's instruction regarding the definition of cunnilingus was vague and inaccurate."

Appellant admits that the trial court utilized the definition of "cunnilingus" set forth in Ohio Jury Instructions; however, he maintains that this definition "is scientifically inaccurate and legally absurd." He further states the trial court's definition allowed the appellant to be convicted of "an impossible task: putting his mouth inside the victim's body." Appellant submitted a special instruction which read: "Cunnilingus is further defined as oral intercourse involving the vagina and the tongue of the perpetrator. In order to be completed, such act requires penetration of the vagina, however slight."

---

5. We note that the cases cited by appellant generally involve testimony of experts who had diagnosed and treated the victims, not experts retained by a defendant for discovery purposes.

"Cunnilingus" is defined as "a sexual act committed with the mouth and the female sexual organ." 4 Ohio Jury Instructions (1993) 165, Section 507.02(9). The court, in *State v. Bailey* (1992), 78 Ohio App.3d 394, 395, 604 N.E.2d 1366, 1367, found this definition to be both "accurate and proper under the existing law." In reference to R.C. 2907.01(A), which defines "sexual conduct," the court rejected appellant's argument that some penetration was required to complete the act of cunnilingus. *Id.* We agree with this holding.

In summary, appellant somehow concludes that the act, as defined by Ohio Jury Instructions, requires putting the mouth inside a woman's body. Regardless, we find no error in the trial court's instructions regarding the definition or its refusal to adopt appellant's special instruction. Appellant's second and third assignments of error are overruled.

"Assignment of Error No. 4

"The trial court erred in denying the defendant's motion to set aside the jury verdict on counts VI, VII, VIII, IX and X."

■ Appellant filed a motion pursuant to Crim.R. 29(C), asserting that there was insufficient evidence to meet the penetration requirement for the five counts of felonious sexual penetration as set forth in R.C. 2907.12(A)(1)(b). He refers to Dr. Sheree Clark's and Detective John Simon's testimonies and maintains that Angela told both of them that there was no penetration.

Pursuant to Crim.R. 29, the trial court shall grant a motion for an acquittal if there is insufficient evidence to sustain a conviction. A court, however, "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

In reviewing the sufficiency of the evidence, the appellate court must "determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2907.12(A)(1)(b) states, in pertinent part: "No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another * * * when * * * [t]he other person is less than thirteen years of age."

The trial transcript includes the following testimony from Angela:

"Q. What kinds of things would he do to you?

"A. Um, well he would touch me, and then he would, sometimes he would stick his fingers inside of me.

"Q. Okay. When you say, referring to—in your vagina. You know what I mean by that?

"A. Yeah."

Angela then testified regarding the other sexual contact. Subsequently, she was asked how often these things happened. Angela responded "[a] lot" and agreed that the contact occurred "more than five different times" over a couple of years beginning when she was about ten years old.

With regard to Dr. Clark's testimony, she described her interview with Angela and stated that Angela recalled "a poking sensation at the vaginal area." On the other hand, Dr. Clark also stated that Angela "could not recall any insertion inside the vagina." Dr. Clark further testified that it is difficult for a young woman to understand what is inside (inside the vagina versus inside the labia) and admitted, "as best as I could determine during the course of that history taking, she was referring to inside the labia as opposed to inside the body." Regarding her physical exam of Angela, Dr. Clark seemed to say that it was consistent with the assertion that there was no penetration in the vagina; however, at another point in her testimony she indicated that "[i]t was not possible in the physical, in the genital examination to determine whether or not vaginal penetration occurred."

Detective Simon's testimony included reference to Angela's statements to the social worker in which she again reported a poking feeling, but indicated that there was no full penetration.

We find that Angela's testimony as well as portions of the other witnesses' testimonies, if believed by the jury, were sufficient to establish the element of penetration required by R.C. 2907.12(A)(1)(b).

■ Within this assignment of error, appellant also asserts that the jury lost its way and was confused with regard to the different crimes and the element of penetration. He contends that this is evident by the jury's questions regarding the definition of "penetration" and their reference to gross sexual penetration instead of felonious sexual penetration. Appellant further cites the jury's finding of guilt on only one count of rape, but on five counts of felonious sexual penetration as support for his assertions.

The record shows that the jury sent a note to the court asking whether the definition of "penetration" for rape was the same definition used for gross sexual penetration. The discussion which ensued between the attorneys and the court concluded that the jury was referring to felonious sexual penetration. The trial

court also noted that the previous instructions provided that penetration, however slight, was required. The court, in its response to the jury, explained that felonious sexual penetration requires the proof of penetration, while gross sexual imposition requires proof of sexual contact. An explanation was also provided to ensure that the jury understood that the charges of felonious sexual penetration referred to the alleged digital penetration. In addition, the court clarified that the rape charge was for the cunnilingus allegations.

Furthermore, appellant somehow thinks that the findings of guilty and not guilty on the various named offenses support his contention that the jury lost its way. The court, at different times, provided the jury with explicit instructions that each count was a separate act and must be considered as such. Regardless, even if the verdicts were inconsistent, the convictions will generally be upheld. *State v. Woodson* (1985), 24 Ohio App.3d 143, 24 OBR 231, 493 N.E.2d 1018, syllabus.

Based on the record, we can find no indication that the jury "lost its way" or was confused when it rendered its verdicts. Hence, the trial court committed no error in denying appellant's motion. Appellant's fourth assignment of error is overruled.

"Assignment of Error No. 5

"The trial court erred in denying defendant's motion for psychological evaluation of the child victims prior to sentencing."

██ Appellant contends that the trial court committed prejudicial error by its failure to follow statutory mandates and cites two sections in support of this assertion: R.C. 2929.12(B)(3) and 2929.12(C)(1). He specifically alleges that psychological examinations were required in order for the trial court to have considered the factors set forth in those sections.

██ A trial court has broad discretion when imposing a sentence. *State v. Bivens* (1988), 49 Ohio App.3d 75, 77, 550 N.E.2d 497, 499–500. However, R.C. 2929.12 sets forth specific criteria the court must consider in determining longer or shorter sentences for felonies. Upon reviewing the trial court's action, even a silent record raises a presumption that the trial court considered the necessary factors. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus. Thus, an appellate court will uphold the trial court's sentencing absent an abuse of discretion. *State v. Yontz* (1986), 33 Ohio App.3d 342, 515 N.E.2d 1012, syllabus.

R.C. 2929.12(B)(3) provides that a trial court, when imposing a longer sentence, must consider whether the victim has suffered severe social, psychological, or physical injury due to the offense. R.C. 2929.12(C)(1) sets forth one of the

factors to be considered when contemplating a shorter term of imprisonment. The court needs to examine whether "[t]he offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so[.]" The statute is void of any requirement that the impact of an offense on a victim needs to be derived from a psychological or social examination.

Appellant asks how the trial court can consider the victims' injuries absent examinations. It is obvious from the judgment entry of sentencing that the trial court considered the victim's impact statements submitted to the court. According to statute, impact statements include descriptions of "any physical injury suffered by the victim * * * [and] any psychological impact experienced by the victim." R.C. 2947.051(B). The statements also "contain any other information related to the impact of the offense upon the victim that the court requires." R.C. 2947.051(B). The transcript reveals that the appellant was also heard in mitigation. Furthermore, the judgment entry of sentencing states that the trial court "made reference to the number and severity of the offenses as well as the appropriate [s]tatutory criteria."

In view of this, we cannot find that the trial court abused its discretion when it denied appellant's motion for psychological evaluations. Appellant's fifth assignment of error is overruled.

Having found no error prejudiciäl to appellant, we affirm the judgment of the Defiance County Court of Common Pleas.

*Judgment affirmed.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur.