OPINION
Defendant-appellant Eddie James Jones, Jr., appeals from his conviction and sentence for Rape of an Individual Under the Age of Thirteen and Rape by Force. He contends that the trial court abused its discretion at trial by permitting the prosecutor to lead the minor complaining witness during direct examination.
We conclude that Jones failed to properly preserve this issue for appeal, and that he has failed to demonstrate plain error. Furthermore, we find that the trial court did not abuse its discretion. Accordingly, the judgment of the trial court isAffirmed.
 I
Jones was arrested on November 4, 1998. He was indicted on three counts of Rape in violation of R.C. 2907.02(A)(1)(b) [individual under the age of thirteen], four counts of Rape in violation of R.C. 2907.02(A)(2) [by force or threat of force], one count of Felonious Sexual Penetration in violation of R.C.2907.12(A)(1)(b), and one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4). All of the charges stem from allegations that Jones sexually abused the two daughters of his girlfriend, with whom he lived.
A jury trial was held in April of 1999, and Jones was convicted on all counts. On July 1, 1999, Jones was designated as a sexual predator. He was sentenced to life in prison, to be served consecutively to a ten-year prison term. Jones appeals from his conviction and sentence.
 II
Jones' sole Assignment of Error is as follows:
 THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW, AND TO A FAIR TRIAL WERE VIOLATED WHEN THE STATE WAS PERMITTED TO ELICIT TESTIMONY, ON THE ULTIMATE ISSUE AT TRIAL BY MEANS OF AN EXCESSIVELY LEADING DIRECT EXAMINATION OF THE MINOR COMPLAINING WITNESS.
Jones contends that the trial court erred by permitting the prosecutor to ask leading questions of one of the complaining victims, Tiffany Hayes. In support, he argues that it was "illegal and contrary to Evid.R. 611(C)" to permit the State to lead the witness during direct examination. He claims that, without the prosecutor's prompting, Tiffany "could not remember nor could she discuss, with the exception of one event, any of the circumstances surrounding any alleged assault on her by [Jones]." Jones does not refer us to any specific question that he contends is objectionable. Instead, he refers us to ten pages of the trial transcript and states that "nearly every direct question asked to the minor complaining witness * * * was a leading question * * *."
We note that Jones objected to only two of the questions posed to Tiffany by the prosecutor. Since neither of these questions involved issues of sexual abuse, they are presumably not the questions addressed by this Assignment of Error, which is therefore governed by the plain error standard of review set forth in Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Manley (1994), 71 Ohio St.3d 342, 347, quoting, State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." Id., quoting, State v. Moreland
(1990), 50 Ohio St.3d 58, 62.
Besides Tiffany's testimony, the State introduced the testimony of several witnesses who corroborated her story. Specifically, Erica Hayes, Tiffany's sister, testified that she was aware of "three or four" times that Jones had engaged in sexual relations with Tiffany. Additionally, Trevor Giles testified that Jones had confided in him while the two shared a jail cell, relating that he, Jones, had been sexually involved with Tiffany. Tiffany's mother, Melanie Hayes, testified that Tiffany had told her that Jones had sex with Tiffany, and that Jones had admitted to having had sex with Tiffany. Given the existence of evidence, other than Tiffany's testimony, upon which a jury could reasonably convict, we cannot say that the outcome of the trial would have been different in the absence of Tiffany's testimony.
Even had Jones properly preserved this issue on appeal, we would not be persuaded that error occurred. "Evid.R. 611(C) provides that leading questions are not to be used in the direct examination of a witness except when necessary to develop the witness' testimony." State v. Rodrigues (Mar. 26, 1996), Franklin App. No. 95APA06-683, unreported. "This exception is quite broad and places limits upon use of leading questions under direct examination within the sound discretion of the trial court."State v. Coy (Mar. 22, 1995). Montgomery App. 14415, unreported;Ramage v. Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, paragraph six of the syllabus.
Ohio courts have upheld the use of leading questions by prosecutors during direct examination in sexual abuse cases where the victim is of "tender years," State v. Timperio (1987),38 Ohio App.3d 156, 158, citations omitted, in order to establish the manner in which he or she has been sexually abused, and to pinpoint specific details and times. State v. Rodrigues, supra. In Coy, supra, this court was unable to state that a criminal defendant was prejudiced by the prosecutor's use of leading questions in the direct examination of a victim as old as thirteen.[1]
There is no doubt that some questions posed by the prosecutor were leading. Without recounting the entire ten pages of the transcript cited by Jones, the following examples will suffice:
Q: Did he ever put his penis in your mouth?
A: Yeah.
* * *
 Q: Now, did Ed ever put his penis in your vagina where you lived here at Triangle View?
A: Yeah.
* * *
 Q: Did he ever put his penis in your vagina where you lived here at 4434 Prescott?
A: Yeah.
All of these questions were preceded by testimony indicating that Tiffany knew what was meant by the words "penis" and "vagina," and that she knew the difference between "good touches" such as hugs, and "bad touches" such as Ed placing his penis in her vagina. Thus, while these questions were leading, we conclude that they were used to establish places and dates where the abuse occurred.
We also find the following excerpts pertinent:
 Q: Now, let's just look at the Y, at the Halloween dance when Erica was gone, okay?
A: Yeah.
 Q: Didn't anything happen to you that night that was real bad?
A: Yeah.
 Q: What was it? Let me ask it a different way? Where did it happen?
A: Upstairs in my room.
Q: And who was there in your room?
A: Ed.
Q: And who else?
A: And me.
Q: And where were you in the room?
A: In my bed asleep.
 Q: And what did he do when he came in? Did he put his private part anyplace?
A: Yeah.
Q: Where?
A: In my vagina.
* * *
 Q: Okay. When we talk about the shower time, was that the last time that anything ever happened?
A: Yeah.
 Q: Was that the night after the Halloween dance that Erica went to?
A: Yeah.
 Q: Can you tell us what happened? You were in the shower and what did Ed do?
A: He just came in there.
* * *
Q: * * * Then when did you see him?
A: Well, when he got in the shower.
Q: What was he wearing then?
A: Nothing.
Q: What did he do when you were in the shower?
A: He put his penis in my butt.
We find that the above cited examples indicate that Tiffany was able to recount incidents of improper sexual conduct with a minimal amount of prompting by the prosecutor.
We have reviewed the entire transcript, and we conclude that the trial court did not abuse its discretion by permitting the State, to a certain extent, to lead its witness.
We cannot find error, and certainly not plain error, from the record. Accordingly, Jones' sole Assignment of Error is overruled.
 III
Jones' sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
 _____________________ FAIN, J.
GRADY, P.J., and YOUNG, J., concur.
[1] Here, there is no dispute that although Tiffany was fourteen years old at the time of trial, she functioned at the mental level of a seven-year-old child.