DECISION.
Raising five assignments of error, defendant-appellant Levon Millow appeals, after a jury trial, his convictions for three counts of rape, in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), all involving the same victim. The jury found that Millow had purposely compelled the victim, a child under the age of thirteen, to submit by force or the threat of force. On a second charge of gross sexual imposition, the trial court granted Millow's Crim.R. 29 motion and entered a judgment of acquittal.
The seven-year-old victim testified at trial, as well as her mother, a twelve-year-old family friend, and Children's Hospital Medical Center physician Dr. Charles J. Schubert. According to the victim, Millow was lying on his side beside the victim, with his head on the pillow, when she saw him put his "private part" in her "private part." She believed that he had pulled her over on her side so that she faced him. She also testified that he had put his "private part" in her mouth and that it was "nasty"; that he had put his mouth on her "private part"; and that he touched her "private part" with his hands. Most of the offenses had occurred when she lived in a "tall building," and, the victim's mother testified, that was when Millow had first moved in with them, when the victim was not quite five years old. The cunnilingus continued when the family moved to another address. The mother testified that she subsequently had two children with Millow. The mother further testified that she had awakened on one occasion to see Millow getting up off the floor where her daughter was lying and that, to her surprise, her daughter had on no underpants. On another occasion she found her daughter sleeping naked in her bed with her bedclothes nearby. She woke her daughter up because she thought she had wet the bed, even though her daughter had been toilet-trained at around two years of age. The mother said that her daughter did not know what had happened to her bedclothes. She spanked the child because she thought that she had wet the bed.
The victim testified that she had worn a nightgown when one of the offenses occurred, but that her underpants had been pulled down by Millow. She testified that Millow had told her she would be "dead meat" if she told her mother, explaining that she understood this meant that she would be dead. The threat was made after the vaginal rape "when I was in my room and he snuck in there and he grabbed me." She also testified that she was afraid that she was going to get a "whooping." She testified that she told a twelve-year-old family friend what Millow had been doing to her, "because she was big and an adult, and she would tell me what to do."
The twelve-year-old family friend confirmed that the victim had told her what had been happening, and that she, in turn, had told the victim that she had to disclose the abuse to her mother. The twelve-year-old testified that the victim would not go to her mother without her. The twelve-year-old did accompany the victim and tell the victim's mother what the victim had described to her.
Dr. Schubert testified that, in his experience with sexually abused children, they could present a variety of behavioral and physical symptoms, including bed-wetting. He confirmed that there was a notching on the victim's hymen that had previously been observed in the emergency department, and although he could not say that it was caused specifically by sexual abuse, he indicated it was frequently seen in children who had been sexually abused.
In his first assignment of error, Millow contends that his conviction was based upon insufficient evidence. To reverse a conviction for insufficient evidence, an appellate court, reviewing the evidence in the light most favorable to the state, must determine that a rational factfinder could not have found the essential elements of the crime proven beyond a reasonable doubt.[1] In doing so, the appellate court may neither resolve evidentiary conflicts in the defendant's favor nor substitute its assessment of the credibility of the witnesses for that of the trier of fact.[2] The conviction may not be disturbed unless the reviewing court is persuaded that reasonable minds could not have reached the conclusion reached by the trier of fact.[3]
To convict Millow, the state had to prove that Millow had engaged in three rapes — vaginal intercourse, fellatio, and cunnilingus — with a person, not the spouse of the offender, who was under the age of thirteen, and that he had engaged in gross sexual imposition and purposely compelled the victim to submit by force or threat of force.
With regard to force, the Ohio Supreme Court in State v. Dye, reversing the court of appeals and reinstating the defendant's convictions and life sentences, held that a person in a position of authority over a child under thirteen may be convicted of the forcible rape of that child, pursuant to R.C. 2907.02(A)(1)(b) and (B), without evidence of an express threat of harm or evidence of significant physical restraint.[4] InDye, the mother had entrusted her nine-year-old son to a family friend, with the admonition to mind him. The court stated,
 We recognize that it is nearly impossible to imagine the rape of a child without force involved. Clearly, a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself. Yet "`[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" [Citations omitted.[5]]
 In Dye, the court refused to make a distinction between biological parents, or other family members who sexually abuse their children, and all other sexual abusers.[6] The court cited State v. Eskridge, which reinstated a defendant's conviction for raping his four-year-old daughter by force, noting that the youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, created a unique position of dominance and control in which explicit threats or display of force were not necessary to effect the abuser's purpose.[7]
In the instant case, viewing the evidence presented by the state at trial in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of rape by vaginal intercourse, fellatio and cunnilingus rapes, and of gross sexual imposition of a child under thirteen proven beyond a reasonable doubt, including the use of force or threat of force.
In his second assignment of error, Millow contends that when the entire record is reviewed, it is clear that the jury lost its way and created a manifest miscarriage of justice, thereby requiring that he be given a new trial. In a manifest-weight challenge, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice so as to entitle the defendant to a new trial.[8] Millow claims here that the victim's testimony was not credible. But the weight to be given the evidence and the credibility of the witnesses at trial were issues primarily for the trier of fact.[9] In addition to hearing the victim's testimony, the jury had the opportunity to hear Millow testify and to assess his credibility. After reviewing the entire record, we cannot conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Millow's conviction and order a new trial. Accordingly, we overrule the second assignment of error.
In his third assignment of error, Millow contends that the trial court erred when it permitted the victim to testify, because she was not competent to be a witness. Evid.R. 601(A) provides the following:
 Every person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.[10]
The Ohio Supreme Court has held,
 In determining the competence of a child witness, the trial court must consider the child's ability to receive, recall, and communicate accurate impressions of fact, understand truth and falsity, and appreciate the responsibility to tell the truth. State v. Frazier
(1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus. Because the trial court has the opportunity to observe the child's appearance, manner of responding to questions, general demeanor and ability to relate facts accurately and truthfully, its determination will not be reversed absent an abuse of discretion. Frazier, 61 Ohio St. 3d at 250-251, 574 N.E.2d at 486-487. See, also, State v. Allard
(1996), 75 Ohio St.3d 482, 496, 663 N.E.2d 1277, 1290.[11]
 The trial court properly conducted a hearing[12] in this case to determine the competency of the child victim. The victim knew that she was seven years old, knew the correct month of her birth, and knew prior schools she had attended and her teacher from the previous year, but not her teacher's name for her upcoming second-grade year. When the trial court asked if it would be the truth if it told her that one of the courtroom walls was red, she answered that it would be a lie because the wall was not red. When asked if it would be the truth if she was told that the courtroom wall was white, she answered in the affirmative. The trial court confirmed that the wall was white and agreed that it was the truth. The trial court then asked her if she was going to tell the truth or a lie, and she answered that she would tell the truth. "Children are not expected to testify with the clarity and sophistication of adult witnesses."[13]
We cannot conclude that the trial court abused its discretion in determining that the victim was competent to testify. Accordingly, we overrule the third assignment of error.
In his fourth assignment of error, Millow claims ineffective assistance of counsel as a result of the failure to object to an improper jury instruction concerning the need for penetration in fellatio and cunnilingus rapes. To prove ineffective assistance of counsel, Millow must demonstrate both that his trial counsel substantially violated an essential duty owed to him and that this deficiency prejudiced his defense so that he was denied a fair trial.[14]
The trial court provided the jury with the instructions for fellatio and cunnilingus given in the Ohio Jury Instructions, but it added a proviso that penetration was not required. This court has already held, with regard to penetration as a requirement for cunnilingus, "that the law requires no further activity to constitute cunnilingus beyond the placing of one's mouth on the female's vagina."[15] And, there is no statutory requirement of penetration as an element of a fellatio rape. The Third District Court of Appeals[16] and the Fourth District Court of Appeals[17] have also unequivocally concluded that penetration is not an element of such an offense. Because there was no requirement that a penetration instruction be given for either fellatio or cunnilingus rape, trial counsel did not violate an essential duty owed to Millow by not objecting either to the lack of such an instruction or to the inclusion of the trial court's proviso. Millow, therefore, suffered no prejudice to his defense. Accordingly, we overrule the fourth assignment of error.
In his fifth assignment of error, Millow contends that his adjudication as a sexual predator was against the manifest weight of the evidence. Observing the difficulty of determining whether a defendant is likely to commit future sexually-oriented offenses, the Ohio Supreme Court has recently propounded a model procedure for conducting sexual-offender-classification hearings, including the following: "Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."[18] In the instant case, the trial judge also presided over Millow's sexual-offender-classification hearing. While the judge did take judicial notice of the jury trial, place into the record the presentence-investigation report, and hear argument from the prosecutor and defense counsel, the transcript of the classification hearing does not show that the judge discussed on the record the particular evidence or factors upon which he relied in making his determination. The judge simply concluded,
 Okay. I do find that this person is a sexual predator beyond any question. This isn't even close. As such, I find him to be a sexual predator.
 The abbreviated explanation given for the judge's conclusion did not satisfy the mandate of State v. Eppinger.[19] Accordingly, we sustain Millow's fifth assignment of error, reverse the trial court's adjudication of Millow as a sexual predator and remand this cause for a new classification hearing in accordance with law and this decision. In all other respects, the judgment of the trial court is affirmed.
 Gorman, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sittingby assignment.
[1] See Jackson v. Virginia (1970) 443 U.S. 307, 319, 99 S.Ct. 2781,2789; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Mechlem (Jan. 24, 1996), Hamilton App. No. C-950328, unreported, citing State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819, 825, certiorari denied (1992), 506 U.S. 921,113 S.Ct. 338; State v. Williams (1997), 79 Ohio St.3d 1, 10, 679 N.E.2d 646, 656, certiorari denied (1998), 522 U.S. 1053, 118 S.Ct. 703.
[3] See State v. Jenks, supra, at 273, 574 N.E.2d at 503.
[4] See State v. Dye (1998), 82 Ohio St.3d 323, 695 N.E.2d 763, syllabus.
[5] See id. at 327, 695 N.E.2d at 766.
[6] See id. at 328-329, 695 N.E.2d at 767.
[7] See id. at 327, 695 N.E.2d at 766.
[8] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720.
[9] See State v. Netherland (1999), 132 Ohio App.3d 252, 265,724 N.E.2d 1182, 1191, citing State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; see, also, State v. Dye
(1998), Ohio St.3d 323, 329, 695 N.E.2d 763, 768, citing State v.DeHass.
[10] See, also, State v. McNeill (1998), 83 Ohio St.3d 438, 442,700 N.E.2d 596, 603.
[11] State v. McNeill (1998), 83 Ohio St.3d 438, 442, 700 N.E.2d 596,603.
[12] See State v. Said (1994), 71 Ohio St.3d 473, 476, 644 N.E.2d 337,340.
[13] State v. Hill (June 17, 1999), Cuyahoga App. No. 73768, unreported, citing State v. Wood (July 13, 1993), Franklin App. No. 92AP-1474, unreported.
[14] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064; accord State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373; see, also State v. Jones (2000), 90 Ohio St.3d 403,407, 739 N.E.2d 300, 308.
[15] See State v. Bailey (1992), 78 Ohio App.3d 394, 395,604 N.E.2d 1366, 1367; see, also State v. Ramirez (1994),98 Ohio App.3d 388, 393, 648 N.E.2d 845, 848; State v. Poe (Oct. 24, 2000), Franklin App. No. 00AP-300, unreported.
[16] See State v. Clark (1995), 106 Ohio App.3d 426, 430, 666 N.E.2d 308,309-310.
[17] See State v. Turvey (1992), 84 Ohio App.3d 724, 748, 618 N.E.2d 214,230.
[18] See State v. Eppinger (2001), 91 Ohio St.3d 158, 166,743 N.E.2d 881, 889.
[19] Id.