OPINION
Defendant-appellant John M. Jenkins appeals from his conviction and sentence on two counts of Rape and one count of Gross Sexual Imposition. Jenkins argues that:
 (1) the State failed to present sufficient evidence to support the charges for which he was convicted;
 (2) the trial court committed plain error by not declaring a mistrial after one of Jenkins' alleged victims was unable to complete her testimony, and by not instructing the jury to disregard any testimony from other witnesses regarding that victim's allegations; and
 (3) his trial counsel provided ineffective assistance of counsel by not requesting a mistrial or the instruction referenced above.
We conclude that:
 (1) the State presented sufficient evidence to support Jenkins' convictions on two counts of Rape and one count of Gross Sexual Imposition;
 (2) the trial court did not commit plain error by not declaring a mistrial sua sponte, nor by not instructing the jury to disregard any testimony from other witnesses regarding the allegations of the alleged victim who was unable to complete her testimony, because the outcome of Jenkins' trial turned on whether the jury chose to believe the remaining alleged victim, which it did; and
 (3) Jenkins' trial counsel was not constitutionally ineffective for failing to request the aforementioned mistrial or instruction, because his decision not to do so was a matter of trial strategy, which is entitled to broad deference, and our confidence in the outcome of the proceedings has not been undermined by the alleged errors.
Accordingly, the judgment of the trial court is Affirmed.
 I
In April 2000, Jenkins was charged with five counts of Rape, two counts of Sexual Battery, and one count of Gross Sexual Imposition. The charges stemmed from allegations that Jenkins sexually molested his two stepdaughters: P.G. and E.E., who were between the ages of 12 and 13, and 11 and 12, respectively, at the time of the alleged incidences.
At Jenkins' trial, the State called E.E. and P.G. as witnesses. The State first called E.E., who testified that she and P.G. had been sexually abused by Jenkins on numerous occasions. The State then called P.G. to the stand. However, before P.G. testified to any specific instances of sexual abuse committed by Jenkins against her, she became unable to continue her testimony. The trial court subsequently granted the State's motion to dismiss the counts of the indictment related to P.G., and instructed the jury to disregard P.G.'s testimony.
The jury convicted Jenkins of two counts of Rape and one count of Gross Sexual Imposition, and acquitted him of the remaining Rape charge. The trial court sentenced Jenkins to two seven-year sentences for his convictions on the Rape charges, and a three-year sentence for his conviction on the Gross Sexual Imposition charge, with the sentences to run concurrently.
Jenkins appeals from his conviction and sentence.
 II
Jenkins' First Assignment of Error states:
 THE RAPE CONVICTION ALLEGING THAT APPELLANT USED A FINGER TO COMMIT THE RAPE SHOULD BE REVERSED BECAUSE THE EVIDENCE TO SUPPORT THAT CHARGE WAS INSUFFICIENT AS A MATTER OF LAW.
Jenkins argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he raped E.E. with his finger. Jenkins contends that because E.E. testified that he "placed his finger inside her" without specifying that he placed it inside her vagina or between her legs, the testimony could be "easily read to mean" that he placed his finger in E.E.'s "mouth, nose, or ear," and that, therefore, the State failed to establish the element of sexual conduct. We disagree.
When determining whether the state has presented sufficient evidence at trial to sustain a criminal conviction, an appellate court must examine the evidence presented to determine whether the evidence, if believed, would convince the average mind that the defendant was guilty of the charge alleged beyond a reasonable doubt.[1] "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[2]
To convict a person of Rape pursuant to R.C. 2907.02(A)(1)(b), the prosecution must show that the offender engaged in sexual conduct with another who is not his spouse, when the other person is less than thirteen years of age, irrespective of whether the offender knows the age of the other person. "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another."[3]
Here, Jenkins has taken E.E.'s testimony out of context in an attempt to demonstrate that it was inadequate to prove the charge that he raped E.E. with his finger. During E.E.'s direct examination, the prosecutor established that E.E. described the area "between [her] legs" as the "front of [her] butt." The prosecutor began questioning E.E. about the types of sexual activity that occurred between her and Jenkins. E.E. testified that one night, Jenkins took her into his and her mother's bedroom, and told her to take off her clothes and to get on the bed. According to E.E., Jenkins put a vibrator "between her legs," which she also referred to as the "front of [her] butt." E.E. stated that Jenkins "moved [the vibrator] around"; when she was asked if he placed it inside or outside of her, she answered, "[o]utside." E.E. testified that Jenkins used the vibrator on her "more than once." The prosecutor then asked E.E. "[w]hat else did he do to you?" E.E. replied that "[h]e would use his finger." E.E. explained the incident as follows:
 A [E.E.] Um, I'd be on the bed and he'd be using his finger either inside me or outside me.
 Q [Prosecutor] Okay. When you say, uh, inside or outside, what do you mean?
A Um, it, I could feel it like inside of me.
Q Okay. He would put his finger up inside you?
A Yes.
Q You're sure?
A Yes.
 Q Okay. And he'd also rub you on the outside then, I take it?
A Yes.
Q All right. Well where would this take place at?
A The bedroom.
 Q Okay. Did any of these things take place anywhere other than the bedroom?
A No.
Although E.E. did not use the word "vagina" in describing how Jenkins used his finger to rape her, the description of this incident immediately followed her description of the incident involving the vibrator, during which E.E. had testified that Jenkins placed the vibrator "between [her] legs" and on "the front of [her] butt," and that he placed it on the outside of her and not the inside. E.E. also testified that the activity took place after Jenkins told her to follow him into the bedroom, and after he told her to take off her clothes and get on the bed. Furthermore, the prosecutor prefaced his questions to E.E. concerning the incidences by telling her that he wanted to discuss each kind of sexual activity that took place between her and Jenkins. When the prosecutor finished questioning E.E. about the "vibrator" incident and asked her immediately thereafter, "[w]hat else did he did to you," it was apparent that the prosecutor was asking E.E. what other types of sexual conduct occurred between her and Jenkins. And when E.E. responded that Jenkins also "used his finger either inside me or outside of me[,]" and answered, "yes," when asked if Jenkins had "put his finger up inside you?," (emphasis added), it was apparent that E.E. was referring to her vagina, and not her "mouth, nose, or ear." Considering E.E.'s testimony in context, and in a light most favorable to the State, we conclude that her testimony provided sufficient evidence to allow a jury to reasonably infer that Jenkins placed his finger insider her vagina, and not some "non-sexual" part of her body.
Jenkins' First Assignment of Error is overruled.
 III
Jenkins' Second Assignment of Error states:
 THE RAPE CHARGE ALLEGING CONTACT BETWEEN APPELLANT'S MOUTH AND [E.E.'S] VAGINAL (sic) SHOULD BE REVERSED BECAUSE THE EVIDENCE TO SUPPORT THAT CONVICTION WAS ALSO INSUFFICIENT.
Jenkins contends that the State presented insufficient evidence to show that he raped E.E. by performing cunnilingus on her.
"Cunnilingus" is "a sexual act committed between the mouth and the female sexual organ."[4] As Jenkins, himself, acknowledges, a charge of Rape is sufficiently proved if the prosecution demonstrates cunnilingus occurred, even if the offender did not insert his tongue in the victim's vagina.[5] Jenkins contends that "while the female sexual organ is located between the legs, that area also encompasses non-vaginal areas[,]" and further contends that E.E.'s testimony could have meant that he simply licked her inner thigh or buttocks. We find this argument unpersuasive.
Once again, Jenkins has taken E.E.'s testimony out of context. Immediately after E.E. testified about the digital rape incident wherein E.E. indicated that Jenkins had placed his finger "up inside her" and "also rub[bed] [her] on the outside" as well, the prosecutor asked E.E. "What else would he do?" E.E. responded as follows:
A He'd use his tongue.
Q Okay. Tell me about that[.]
A Um, it would just be on the outside.
Q Okay. Talk to me. What happened?
A I'd be on the bed and he'd use his tongue and rub.
Q Okay. Well you'd be on the bed?
A Yeah.
Q And he would put his tongue down there —
A Yes.
Q — between your legs?
A Yes.
Q You refer to it as the front of your butt?
A Yes.
Q Okay. And would he put his tongue inside you?
A No.
 Q Okay. Well tell me what he would do with his tongue then?
A Um, it'd either be going up or down or sideways.
Q Okay. Where at?
A Um, uh, the front of my butt.
When E.E.'s testimony regarding Jenkins' performing oral sex on her is considered in the context of the rest of her testimony, it is apparent that E.E. was testifying that Jenkins placed his mouth on the outside of her vagina. Additionally, in another part of her testimony, E.E. described an incident where Jenkins attempted to perform vaginal intercourse on her:
Q What else did he do? Anything?
 A Yes. Um, this is he tried to do but didn't make it. Um, he tried to put his private parts inside mine.
Q Where?
A The front of my butt.
This testimony further demonstrates that when E.E. used the phrase "front of my butt," she was referring to her vagina.
Jenkins' Second Assignment of Error is overruled.
 IV
Jenkins' Third Assignment of Error states:
 THE GROSS SEXUAL IMPOSITION CONVICTION SHOULD BE REVERSED BECAUSE THE STATE FAILED TO PROVE THAT APPELLANT "TOUCHED" [E.E.'S] EROGENOUS ZONE.
Jenkins asserts that the State failed to present sufficient evidence to sustain his conviction on the Gross Sexual Imposition charge.
To convict a person of Gross Sexual Imposition pursuant to R.C.2907.05(A)(4), the State must to show, among other things, that the offender had sexual contact with another.[6] "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast for the purpose of sexually arousing or gratifying either person."[7]
E.E. testified that Jenkins took her into his and her mother's bedroom, and told her to take off her clothes and get on the bed. E.E. stated that Jenkins placed a vibrator between her legs, which she also referred to as the front of her butt.
First, Jenkins asserts that the term "between my legs" is "sufficiently vague so as to encompass both erogenous and `non-erogenous' areas." We disagree. We conclude, for the same reasons stated earlier, that when E.E.'s testimony is considered in context, the jury could reasonably infer that Jenkins touched one of E.E.'s erogenous zones. Furthermore, the list of erogenous zones in R.C. 2907.01(B) is illustrative, not exhaustive, and we conclude that in this case the State proved beyond a reasonable doubt that Jenkins' having touched his nude stepdaughter between her legs with a vibrator constituted the touching of an erogenous zone of another, even if the area touched was not her vagina, buttock, or thigh.
Second, Jenkins asserts that, implicit in the definition of "sexual contact" is that a person, not a thing, touches the erogenous zone; thus, where the alleged offender uses some object like a vibrator to touch the erogenous zone, the alleged offender cannot be found guilty of Gross Sexual Imposition. We disagree.
The word "touching," as used in the definition of "sexual contact," is not defined by statute; therefore, we must use its common and ordinary meaning.[8] The definitions of "touching" include: "[t]o bring (one thing) into contact with something else";[9] and "to strike or push lightly[,] extend the hand or foot or an implement so as to reach, nudge, stir up, inspect, [or] arouse[.]"[10] Therefore, Jenkins' use of a vibrator to touch one of E.E.'s erogenous zones constituted a "touching" for purposes of the statutory definition of "sexual contact."
Jenkins' Third Assignment of Error is overruled.
 V
Jenkins' Fourth Assignment of Error states:
 THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT FAILED TO DECLARE A MISTRIAL AFTER THE PROSECUTION DISMISSED THE CHARGES PERTAINING TO ONE OF THE VICTIMS.
Jenkins argues that the trial court erred by not declaring a mistrial after P.G. became too emotional to continue her testimony, and by not ordering a new trial, at which only the charges against E.E. would have been heard. Alternatively, he argues that, in addition to instructing the jury to disregard P.G.'s testimony after the charges relating to her allegations had been dismissed, the trial court should have instructed the jury to disregard any testimony from any other witness, including E.E. and S.W., E.E.'s and P.G.'s maternal grandmother, regarding his alleged sexual conduct with P.G. However, Jenkins acknowledges that his trial counsel did not request a mistrial and did not request an instruction ordering the jury to disregard any testimony from other witnesses regarding his alleged sexual conduct with P.G.; therefore, these contentions must reviewed under the "plain error" standard. "Plain error" exists in criminal trials only where the outcome of the proceedings would clearly have been different had the error not occurred.[11]
Here, Jenkins cannot meet that burden. Even assuming for the sake of argument that the trial court erred by not declaring a mistrial sua sponte, or by failing to instruct the jury to disregard any testimony from E.E. and S.W. regarding P.G.'s allegations, the outcome of the proceedings would not clearly have been otherwise, because the outcome of Jenkins' trial turned on whether the jury chose to believe E.E., which it did.
Jenkins' Fourth Assignment of Error is overruled.
 VI
Jenkins' Fifth Assignment of Error states:
 TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THE FEDERAL CONSTITUTION, FOR FAILING TO REQUEST A MISTRIAL.
Jenkins argues that his trial counsel was ineffective for failing to request a mistrial after P.G. was unable or unwilling to continue with her testimony, and for failing to request that the jury be instructed to disregard any testimony from other witnesses regarding P.G.'s allegations against him.
To demonstrate that he was deprived of the effective assistance of counsel, a criminal defendant must show that his counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and that he was prejudiced thereby, in that, if it were not for his counsel's unprofessional errors, a reasonable probability exists that the outcome of the proceedings would have been different.[12]
A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.[13] A failure to make an adequate showing on either the "performance" or "prejudice" prong of the standard will doom the defendant's ineffective assistance claim.[14]
Here, the decision of Jenkins' trial counsel not to request a mistrial or an instruction ordering the jury to disregard E.E.'s and S.W.'S testimony regarding P.G.'s allegations involved matters of trial tactics, on which trial counsel's decisions must be given broad deference.[15] The fact that P.G. was unable or unwilling to continue her testimony actually hurt the State's remaining case, thereby increasing Jenkins' chance of an acquittal. Additionally, our confidence in the outcome of the proceedings has not been undermined in light of these alleged errors because, as stated previously, the outcome of Jenkins' trial turned on whether the jurors chose to believe E.E., which they did. Jenkins' argument to the contrary, the fact that E.E. and S.W. testified that Jenkins molested P.G. did not bolster E.E.'s credibility with respect to her allegations that Jenkins abused her. Indeed, the fact that P.G. was unable or unwilling to complete her testimony actually may have undermined E.E.'s and S.W.'s credibility, by suggesting that P.G. was unable to go through with her lies when she had an attack of conscience while on the witness stand, thereby playing into Jenkins' argument that his stepdaughters were fabricating charges against him.
Jenkins' Fifth Assignment of Error is overruled.
 VII
All of Jenkins' assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[2] Id.
[3] R.C. 2907.01(A).
[4] State v. Ramirez (1994), 98 Ohio App.3d 388.
[5] Id.
[6] R.C. 2907.05(A)(4).
[7] R.C. 2907.01(B).
[8] See R.C. 1.42.
[9] Webster's II New College Dictionary (1995) 1164.
[10] Webster's Third New International Dictionary (1966) 2415.
[11] State v. Underwood (1983), 3 Ohio St.3d 12.
[12] Strickland v. Washington (1984), 466 U.S. 668.
[13] Id.
[14] Id.
[15] Id.