DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Merle Pemberton, appeals the judgment of the Lorain County Court of Common Pleas convicting him of one count of Rape, a violation of R.C. 2907.02(A)(1)(b),[1] a felony of the first degree and one count of Felonious Sexual Penetration, a violation of R.C.2907.12(A)(1)(b),[2] a felony of the first degree. This Court affirms.
 I. {¶ 2} On December 10, 2003, the Lorain County Grand Jury indicted Appellant on one count of Rape, a violation of R.C. 2907.02(A)(1)(b), a felony of the first degree and one count of Felonious Sexual Penetration, a violation of R.C. 2907.12(A)(1)(b), a felony of the first degree. Appellant entered a plea of "not guilty" on February 11, 2004. On January 11, 2005, Appellant filed a waiver of his right to a jury trial. Appellant's bench trial commenced on January 25, 2005 in Lorain County Common Pleas Court. On January 31, 2005, the court found Appellant guilty of both counts alleged in the indictment and sentenced him to a term of five to twenty-five years incarceration on each count. The court ordered Appellant to serve these terms concurrently and gave Appellant credit for time served. In addition, the court identified Appellant as a habitual sexual offender and imposed a community notification. Appellant timely filed his notice of appeal on February 14, 2005.
 II. ASSIGNMENT OF ERROR I.
"APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 ASSIGNMENT OF ERROR II.
"THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AS TO COUNTS ONE, TWO AND THREE OF THE INDICTMENT[.]"
 {¶ 3} In his assignments of error,[3] Appellant argues that insufficient evidence was produced to sustain his convictions for Rape and Felonious Sexual Penetration and that the court erred in failing to grant his motion for acquittal of these charges and that his convictions were against the manifest weight of the evidence. This Court disagrees. Because Appellant's assignments of error are interrelated, we will address them together.
 {¶ 4} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 6} When a defendant asserts that the conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 7} Appellant was convicted of Rape, a violation of R.C.2907.02(A)(1)(b), a felony of the first degree and one count of Felonious Sexual Penetration, a violation of R.C. 2907.12(A)(1)(b), a felony of the first degree. R.C. 2907.02 provides:
"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
"* * *
"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
Sexual conduct is defined as:
"vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between person regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
R.C. 2907.12(A)(1) provides:
"No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender * * * when any of the following applies:
"* * *
"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 8} Appellant contends that there is reasonable doubt as to whether he committed these crimes because the State failed to provide physical evidence of his guilt and the court based his convictions solely on the victim's ("A.M.") inconsistent testimony. Appellant also challenges the reliability of A.M.'s testimony because the alleged incidents occurred several years ago when A.M. was very young and A.M. did not report the incidents for several years.[4]
 {¶ 9} The State presented the testimony of six witnesses. Among those were the victim, the victim's mother, grandmother, half-sister ("sister"), social worker and Appellant's former cellmate. At the time the alleged offenses occurred, A.M. lived with her mother, while her half-brother ("brother") and half-sister ("sister") lived with their grandmother.
 {¶ 10} A.M. testified to the following: A.M. spent the night at her grandmother's house several times during the end of October and beginning of November 1994. A.M. was five years old at this time. A.M.'s brother was terminally ill and was living with their grandmother. Appellant resided at A.M.'s grandmother's house during this time so that he could spend time with his son. A few nights before A.M.'s brother passed away, A.M. was watching TV with her brother, sister and Appellant. A.M. was seated on the couch under a quilt and Appellant was seated next to her. Appellant rubbed A.M.'s leg and then moved his arm up her leg and then stuck his finger in her vagina. Appellant "pushed really hard" which caused A.M. significant pain and kept his finger in that position for approximately three minutes. A.M. did not yell or cry out because she was afraid that she might get in trouble. A.M. believes that Appellant stopped touching her because her grandmother or mother walked in to the room.
 {¶ 11} A.M. also testified that a few days later, while she was lying in bed, Appellant came in to the bedroom and began kissing her on her cheek and neck. Appellant then "got on top" of A.M., pulled her underwear down, and "put his penis in [her] vagina and started moving back and forth." A.M. testified that Appellant kept his penis in that position for approximately five minutes. Appellant then got up and walked out of the room.
 {¶ 12} Additionally, A.M. testified that she did not tell anyone about the two incidents until she was in sixth grade, at which time she reported the incidents to her school counselor who did not take any action. A.M. testified that she knew that Appellant's actions were wrong but she did not want to say anything because she was afraid she would get in trouble. A.M. told her sister about the incidents several years later but recanted her story after her sister told their grandmother. A.M. told her social worker, Angela Carrao ("Carrao"), about the incidents during one of their meetings. Carrao told Children's Services about the incident who then involved the Sheffield police. A.M. testified that she was upset that Carrao informed Children's Services because she "didn't want to, like, publicize what had happened" and "didn't want to tell everybody about it because [she] felt like it was an invasion of [her] privacy."
 {¶ 13} On cross-examination, A.M. testified that in 2001, while the Sheffield police were investigating the sister's allegations against Appellant, they questioned A.M. to determine whether Appellant sexually abused her. A.M. told the police that Appellant had not sexually abused her. At this time, A.M.'s mother also asked her whether Appellant sexually abused her and she again stated that he had not sexually abused her. A.M. then told her grandmother that Appellant had sexually abused her but her grandmother did not believe her. A.M. told Carrao about the abuse in October 2003.
 {¶ 14} A.M.'s sister testified as follows: Nearly every time Appellant came to stay at her grandmother's house, prior to her brother's death, the sister had an encounter with Appellant wherein he touched her in her "vaginal area." She testified that this happened "when there was nobody around, like when grandma would leave." She further stated that she did not tell anyone about these incidents after they happened "because [Appellant] said he'd hurt me if I ever told anybody." The sister testified that Appellant said he would kill her if she told anyone. The sister was approximately seven years old at the time of these incidents. She finally told her grandmother about the incidents in 2001, after she had been hospitalized as a result of self-inflicted lacerations. The sister testified that A.M. never told her about her abuse even after the sister specifically asked A.M.
 {¶ 15} A.M.'s social worker, Carrao, testified to the following: During her twenty-two year career in social work, she frequently counseled children who were the victims of sexual abuse. Carrao initially counseled A.M.'s sister. As a part of A.M.'s counseling sessions with the sister, she met with the sister's family members. Through Carrao's interactions with A.M., she determined that A.M. also required her services and consequently, began meeting with A.M. In October 2003, Carrao met with A.M. for their first individual counseling session. At this time, A.M. told Carrao that she had been sexually abused by Appellant on five or six different occasions. When Carrao told A.M. that she had to report A.M.'s sexual abuse, A.M. told Carrao that "she was very afraid and that she felt very stupid and embarrassed."
 {¶ 16} Rodney Peterson ("Peterson"), Appellant's former cellmate, also testified. Appellant and Peterson were cellmates at the Lorain County Jail for a two week period in 2004. Peterson testified that while he and Appellant were cellmates, Appellant described his sexual abuse of A.M. and her sister. Peterson closely identified the sisters' names and their relationship to Appellant. Based on his discussions with Appellant, Peterson sent a letter to the Lorain County Prosecutor's office in which he detailed his conversations with Appellant. Peterson did not request anything in return for his testimony against Appellant and did not receive any consideration from the Prosecutor's office. Peterson admitted that he has several felony convictions for drug abuse, theft, assault, and two misdemeanor convictions for domestic violence.
 {¶ 17} On cross-examination, Peterson also admitted that he wrote two motions on behalf of Appellant in the within matter including a motion which sought to have Appellant's counsel removed from the case and a motion concerning a possible statute of limitations defense.
 {¶ 18} After a careful review of the evidence, we cannot say that the court created a manifest miscarriage of justice when it found Appellant guilty of Rape and Felonious Sexual Penetration. This is not a case where the evidence weighs heavily in favor of Appellant. Appellant did not testify, provided no witnesses to testify on his behalf and presented no evidence other than an expert report from a psychologist who did not interview A.M.
 {¶ 19} While physical evidence would strengthen the reliability of A.M.'s statements, such evidence is not required. State v. Wilson (Apr. 1, 1998), 9th Dist. No. 18193, at *12; State v. Hall (Jan. 24, 2001), 9th Dist. No. 20089, at *31-32. Any inconsistencies in the witnesses' testimony are overshadowed by the sister's compelling testimony that Appellant also sexually abused her in a similar manner and around the same time period as the incidents at issue here. Furthermore, inconsistencies are reasonable in light of the length of time between the occurrence of the incidents and the court proceedings and A.M.'s age at the time of the incidents. Although Peterson's testimony raises credibility issues, we find that Peterson could only have learned the details of Appellant's acts, including names and relationships of the victims, through Appellant's disclosure of this information.
 {¶ 20} The State established the necessary elements of the offenses through testimony of its six witnesses. We will not disturb the trial court's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and found that Appellant committed the charged offenses. Upon review of the testimony presented at trial, we cannot find that the court lost its way. We cannot, therefore, find that the trial court's conviction created a manifest miscarriage of justice and we will not disturb the same.
 III. {¶ 21} Appellant's two assignments of error are overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Batchelder, J. Concur.
[1] R.C. 2907.02 was repealed on July 1, 1996. Because the incidents involved in this action occurred prior to 1996, Appellant was indicted under the repealed statute which was in effect at that time.
[2] R.C. 2907.12 was repealed on July 1, 1996. Because the incidents involved in this action occurred prior to 1996, Appellant was indicted under the repealed statute which was in effect at that time.
[3] Although Appellant states that he was indicted on three counts, his record reflects a two count indictment.
[4] Appellant claims that A.M. was six years old at the time of the incident however, the record reflects that A.M. was actually five years old.