[Cite as *In re A.M.P.*, 2016-Ohio-3546.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NO. CA2016-01-020 |
| A.M.P. | : | O P I N I O N |
| | : | 6/20/2016 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JV2015-1988

Dell W. Grunenberg, 306 South Third Street, Hamilton, Ohio 45011, for appellant

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

**S. POWELL, P.J.**

{¶ 1} Appellant, A.M.P., appeals from his adjudication as a delinquent child in the Warren County Court of Common Pleas, Juvenile Division, for having committed an act that if charged as an adult would constitute grand theft. A.M.P. also appeals from the dispositional decision issued by the Butler County Court of Common Pleas, Juvenile Division, ordering him to pay $15,000 in restitution. For the reasons outlined below, we affirm.

{¶ 2} On August 13, 2015, a detective with the Mason Police Department filed a

complaint with the Warren County Juvenile Court alleging A.M.P. was a delinquent child for having committed grand theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony if committed by an adult. As stated in the complaint, the charge stemmed from allegations that on August 3, 2015 while in Warren County, Ohio, A.M.P. stole over $10,000 in cash and several pieces of jewelry and other property worth approximately $5,000 from P.A. The matter then proceeded to a two-day adjudication hearing before a Warren County Juvenile Court magistrate that ultimately concluded on October 19, 2015.

{¶ 3} At the adjudication hearing, P.A. and her husband F.A. testified that their home security system recorded three individuals breaking into two of their four vehicles parked outside in the driveway of their home in Mason during the early morning hours of August 3, 2015. Because P.A. and F.A. were in the process of moving, the vehicles contained two Louis Vuitton purses, a Louis Vuitton wallet, several pieces of jewelry, and over $10,000 in cash. As P.A. testified, "[t]here were movers and people delivering furniture and I just figured it would be safer * * * to keep it in one place where I know where it is." The recording was then provided to Mason Police Department and also played on a local news channel's "Crime Stoppers" report.

{¶ 4} In addition to this testimony, K.C., whose sister is dating one of A.M.P.'s close friends, T.L., testified his sister called T.L. and invited him to visit her while she was on vacation with her family in Myrtle Beach, South Carolina. While there, K.C. testified he saw T.L. and A.M.P., who he had known for approximately five years, as well as two other males, B.G. and D.S., in a brand new "blue Chrysler 300 with 30 day tags" from Butler County, Ohio. When asked if A.M.P. made any statements about where the car came from, K.C. testified A.M.P. told him "[he] and [B.G.] had hit a lick in Mason, that's why [the car] was theirs and they meant by hit a lick they meant robbed and they had paid for [the car] with that cash that they got." K.C. also testified A.M.P. told him "they had right around I believe ten to twelve

- 2 -

grand cash" and that "they were Robin Hood stealing from the rich and giving to the poor." K.C. further testified that A.M.P. told him they "had hit the car" and bragged about the expensive clothes they were wearing. K.C. testified he later saw A.M.P. with a wad of cash in his sock "and it was like I've got two grand in my sock and was just like flaunting it."

{¶ 5} Still vacationing in Myrtle Beach, K.C. testified he saw the Crime Stoppers report on the Internet while scrolling through his Facebook feed and immediately recognized A.M.P. as one of the three individuals involved in the theft. After seeing the video, K.C. testified he called the Crime Stoppers number and the Mason Police Department. As K.C. testified, "I just knew right away I seen [A.M.P.]. He had just like a sluggish appearance. You could tell that was him." The video recording was then played and K.C. positively identified A.M.P. as one of the three individuals depicted in the video. Specifically, K.C. testified that A.M.P. was "[t]he first one that got into the passenger side of the black SUV" and that he was also the individual "with the bag at the end. A white bag. That was the last person I seen on the video." K.C. then made a positive in-court identification of A.M.P.

{¶ 6} In his defense, A.M.P. testified and acknowledged that he went to Myrtle Beach with T.L., B.G., D.S., and another male, C.H., on August 4, 2015 in the brand new Chrysler 300. However, A.M.P. testified that the car belonged to T.L. and that he was not present when T.L. purchased the car. A.M.P. also denied any involvement with the theft, that he was not one of the three individuals depicted in the video recording of the theft, and that he never had a conversation with K.C. regarding the theft. Rather, A.M.P. testified K.C., who he referred to as his "cousin's cousin," merely told him how to "dive into the waves" and invited him to a party at his house. Thereafter, when asked if there was any reason why he thought K.C. would make up this story, A.M.P. testified that "[t]he only thing that I could think of was to maybe cover up for somebody else."

{¶ 7} After both parties rested, the magistrate issued a decision adjudicating A.M.P. a

delinquent child. In so holding, the magistrate stated:

> I think * * * the fact that * * * [K.C] was able to identify the defendant in the video, that he bragged that [K.C.] testified that defendant bragged to [K.C.] about his new clothes, * * * hitting a lick in Mason, * * * bragging that they took $12,000 which is pretty corroborative of the amount of money taken from [F.A. and P.A.], * * * defendant bragging that he was stealing from the rich and giving to the poor and [K.C.] observing defendant to have a large wad of cash on his person I think are all sufficient to find beyond a reasonable doubt that defendant participated in this offense.

{¶ 8} After the adjudication hearing concluded, but prior to issuing any order adopting the magistrate's decision, the Warren County Juvenile Court issued an order transferring the matter to the Butler County Juvenile Court for purposes of disposition in accordance with R.C. 2151.271 and Juv.R. 11(C). As relevant here, pursuant to Juv.R. 11(C), "the adjudicatory hearing shall be held in the county wherein the complaint was filed. Thereafter the proceeding may be transferred to the county of the child's residence for disposition." It is undisputed that A.M.P. was a resident of Butler County at all times relevant.

{¶ 9} One week later, on October 26, 2015, the Butler County Juvenile Court held a hearing wherein the parties all agreed to postpone the disposition hearing until December 22, 2015 so that a restitution order could be established. A.M.P., for whom the Butler County Juvenile Court appointed different counsel for purposes of disposition, did not object to this continuance. Four days later, on October 30, 2015, A.M.P.'s original counsel who represented him at his adjudication hearing, filed objections to the magistrate's decision with the Warren County Juvenile Court. A.M.P. also requested the Warren County Juvenile Court provide him with a transcript of the adjudication hearing. Three days later, on November 2, 2015, the Warren County Juvenile Court issued an entry granting A.M.P.'s motion for a transcript of the adjudication hearing and further stated that "the portion(s) of the Magistrate's Decision objected to are STAYED pending this Court's disposition of the objections." A.M.P.

- 4 -

later supplemented his objections to the magistrate's decision on December 7, 2015.

{¶ 10} On December 22, 2015, the parties reconvened at the Butler County Juvenile Court for purposes of holding the previously continued disposition hearing. No party objected to holding the disposition hearing, nor did any of the parties notify the Butler County Juvenile Court that A.M.P. had since filed objections to the magistrate's decision with the Warren County Juvenile Court. Rather, dealing solely with the issue of restitution, F.A. testified that he was familiar with the two Louis Vuitton purses, the Louis Vuitton wallet, and jewelry taken from he and his wife's vehicles, items he estimated had total value of at least $4,400. F.A. also testified that a total of $10,600 in cash was taken from his wife's purses and wallet. The Butler County Juvenile Court then issued its dispositional decision ordering A.M.P. to serve 90 days in the Butler County Juvenile Detention center with a suspended six-month commitment to the Ohio Department of Youth Services. The Butler County Juvenile Court also ordered A.M.P. to pay $15,000 in restitution. Again, A.M.P. never objected to the Butler County Juvenile Court holding the disposition hearing or issuing a dispositional decision.

{¶ 11} Nine days later, on December 31, 2015, the Warren County Juvenile Court affirmed and adopted the magistrate's decision adjudicating A.M.P. a delinquent child. As part of that decision, the Warren County Juvenile Court stated that it found "[K.C.] presented as a far more credible witness than [A.M.P.]." The Warren County Juvenile Court then issued another entry on January 11, 2016 that again transferred the matter to the Butler County Juvenile Court. A.M.P. now appeals from these decisions, raising three assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THERE WAS INSUFFICIENT EVIDENCE TO ADJUDICATE THE DEFENDANT-APPELLANT DELINQUENT FOR COMMITTING GRAND THEFT.

{¶ 14} In his first assignment of error, A.M.P. argues his adjudication as a delinquent

- 5 -

child by the Warren County Juvenile Court was not supported by sufficient evidence. We disagree.

{¶ 15} "The appropriate standard of review in determining whether there was sufficient evidence presented to the juvenile court to support its adjudication of delinquency is the same as the one used in adult criminal cases." *In re M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677, ¶ 27. To that end, when reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 16} As noted above, A.M.P. was adjudicated a delinquent child by the Warren County Juvenile Court for committing an act that if charged as an adult would constitute grand theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony.[1] Pursuant to that statute, "[n]o person, with purpose to deprive the owner of property or services, shall

---

1. Although ordinarily only a first-degree misdemeanor theft offense, R.C. 2913.02(B)(2) elevates that charge to a fourth-degree felony grand theft offense when "the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars[.]"

knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"  As defined by R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 17} A.M.P. argues his adjudication as a delinquent child was not supported by sufficient evidence since K.C.'s testimony identifying of him as one of the three individuals depicted in the video recording of the theft lacked credibility and was based on pure speculation.  However, as the record plainly reveals, K.C. specifically testified that he immediately recognized A.M.P. as one of the three individuals depicted in the video when he first saw the Crime Stoppers report on the Internet while scrolling through his Facebook feed when on vacation with his family in Myrtle Beach.  Again, as K.C. testified, "I just knew right away I seen [A.M.P.].  He had just like a sluggish appearance.  You could tell that was him."  K.C. then testified that A.M.P. was "[t]he first one that got into the passenger side of the black SUV" and that he was also the individual "with the bag at the end.  A white bag.  That was the last person I seen on the video."  The Warren County Juvenile Court found this testimony credible, whereas A.M.P.'s own testimony denying his involvement in the theft was not.  The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.  *In re M.G.*, 2016-Ohio-2677 at ¶ 36.  Therefore, A.M.P.'s argument is without merit.

{¶ 18} A.M.P. also argues his adjudication was not supported by sufficient evidence because it was based on inadmissible hearsay statements and unauthenticated business records.  However, A.M.P. never raised any objection to this evidence when it was presented at the adjudication hearing.  Moreover, because A.M.P.'s adjudication was tried to the bench, it is presumed that only admissible evidence was considered.  *In re B.T.B.*, 12th Dist. No.

CA2014-10-199, 2015-Ohio-2729, ¶ 35. As noted above, this includes K.C.'s direct testimony specifically identifying A.M.P. as one of the three individuals depicted in the video recording of the theft. Again, the Warren County Juvenile Court found this testimony credible, whereas A.M.P.'s own testimony denying his involvement in the theft was not. Therefore, A.M.P.'s additional arguments are also without merit. Accordingly, having found no merit to any of the arguments advanced herein, A.M.P.'s first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} In his second assignment of error, A.M.P. argues his adjudication as a delinquent child by the Warren County Juvenile Court was against the manifest weight of the evidence. We again disagree.

{¶ 22} Just as with the sufficient evidence standard of review, the standard of review applied in determining whether a juvenile court's adjudication of delinquency is against the manifest weight of the evidence is likewise the same standard this court applies in adult criminal convictions. *In re D.T.W.*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317, ¶ 32. A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th

Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 23} A.M.P. argues his adjudication as a delinquent child was against the manifest weight of the evidence since K.C.'s testimony was unreliable and completely biased. However, "[a]s the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13. Moreover, although faced with conflicting evidence, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Therefore, because we find this is not one of those extraordinary cases where the evidence presented at the adjudication hearing weighed heavily in favor acquittal, A.M.P.'s argument alleging his adjudication was against the manifest weight of the evidence is without merit. Accordingly, A.M.P.'s second assignment of error is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE TRIAL COURT ERRED BY ORDERING DEFENDANT-APPELLANT TO PAY $15,000 RESTITUTION.

{¶ 26} In his third assignment of error, A.M.P. argues the Butler County Juvenile Court erred by ordering him to pay $15,000 in restitution. We disagree.

{¶ 27} A.M.P. initially argues the Butler County Juvenile Court did not have the authority to order him to pay restitution when his objections to the magistrate's decision adjudicating him a delinquent child were still pending before the Warren County Juvenile Court. In support of this claim, A.M.P. cites to Juv.R. 40(D)(4)(e)(i), which provides, in pertinent part:

> The court may enter a judgment either during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired. If the court enters a judgment during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered.

{¶ 28} In this case, however, the Warren County Juvenile Court never entered a judgment adopting the magistrate's decision adjudicating A.M.P. a delinquent child before transferring the case to the Butler County Juvenile Court for disposition as provided by R.C. 2151.271 and Juv.R. 11(C). The record also indicates that the Warren County Juvenile Court did not enter a judgment adopting the magistrate's decision during the 14 days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to the magistrate's decision. Rather, the Warren County Juvenile Court only entered its judgment affirming and adopting the magistrate's decision adjudicating A.M.P. a delinquent child as part of its decision on A.M.P.'s objections to the magistrate's decision. This decision was released on December 31, 2015, a full 73 days after the magistrate issued its decision adjudicating A.M.P. a delinquent child on October 19, 2015, and nine days after the Butler County Juvenile Court held a disposition hearing and issued its dispositional decision on December 22, 2015. Therefore, because the Warren County Juvenile Court did not enter a judgment during any of the 14 days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to the magistrate's decision, Juv.R. 40(D)(4)(e)(i) is simply not applicable here.

**{¶ 29}** Nevertheless, although Juv.R. 40(D)(4)(e)(i) does not apply, it is still well-established that a magistrate's decision is not effective unless it is adopted by the juvenile court. *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 7 (12th Dist.), citing Juv.R. 40(D)(4)(a). In turn, we find it was improper for the Warren County Juvenile Court to transfer this case to the Butler County Juvenile Court prior to issuing a judgment adopting the magistrate's decision adjudicating A.M.P. a delinquent child. Similarly, although it appears the Butler County Juvenile Court was never made aware that objections to the magistrate's decision had been filed in the Warren County Juvenile Court, we also find it was improper for the Butler County Juvenile Court to hold a disposition hearing and issue its dispositional decision ordering A.M.P. to pay $15,000 in restitution when his objections to the magistrate's decision were still pending. This is particularly true here considering the Warren County Juvenile Court attempted to stay the action pending its ruling on A.M.P.'s objections, although seemingly never communicating that fact to the Butler County Juvenile Court.

**{¶ 30}** However, after a thorough review of the record, it is clear that no objection was ever raised challenging the Butler County Juvenile Court's authority to hold a hearing and issue its dispositional decision. In fact, no reference was ever made at the dispositional hearing before the Butler County Juvenile Court that A.M.P. had even filed objections to the magistrate's decision with the Warren County Juvenile Court. Rather, the Butler County Juvenile Court mistaken believed that there "has already been an adjudication." None of the parties ever corrected this mistaken belief, nor did they correct the Butler County Juvenile Court when it mistakenly stated A.M.P. had entered a plea. Therefore, under the unique facts and circumstances of this case, and in light of our decision above affirming the Warren County Juvenile Court's decision adjudicating A.M.P. a delinquent child, we find A.M.P. suffered no prejudice due to this irregularity, thus rendering any error, at worst, harmless.

**{¶ 31}** In so holding, we note that this irregularity did not create a jurisdictional defect

for it is clear that both the Warren County Juvenile Court and the Butler County Juvenile Court had jurisdiction to adjudicate A.M.P. a delinquent child and enter a dispositional decision. *See* R.C. 2151.271 and Juv.R. 11(C). Rather, this merely created an issue regarding venue. However, it is well-established that both R.C. 2151.271 and Juv.R. 11(C) allow for "hybrid venue in the interests of justice and for the convenience of the parties." *Rife v. Morgan*, 2d Dist. Champaign No. 98-CA-6, 1998 WL 879217, *2 (Dec. 18, 1998). "[W]here a juvenile fails to object to venue, it is waived upon appeal." *State v. Phillips*, 12th Dist. Clinton No. 2009-03-001, 2010-Ohio-2711, ¶ 19. This decision comports with the issue of fairness and the considerations of judicial economy and efficiency. Yet, we stress that efforts should be taken to avoid a repeat of this situation going forward. A.M.P.'s first argument is therefore without merit.

{¶ 32} A.M.P. also argues the Butler County Juvenile Court's decision ordering him to pay $15,000 in restitution was improper as it was not supported by competent and credible evidence. Specifically, A.M.P. argues that it was improper to order restitution based on the testimony provided by F.A. when only his wife, P.A., was identified as the victim in the complaint. A.M.P. also argues that it was improper for the Butler County Juvenile Court to rely on F.A.'s testimony since he did not have the requisite personal knowledge necessary to testify as to the value of the stolen property. We disagree.

{¶ 33} Pursuant to R.C. 2152.20(A)(3), if a child is adjudicated a delinquent, the juvenile court may "require the child to make restitution to the victim of the child's delinquent act * * * in an amount based upon the victim's economic loss caused by or related to the delinquent act." As defined by R.C. 2152.02(L), "economic loss" means "any economic detriment suffered by a victim of a delinquent act * * * as a direct and proximate result of the delinquent act[.]" In making this determination, R.C. 2952.20(A)(3) permits the juvenile court to base its restitution order on:

an amount recommended by the victim or survivor of the victim, the delinquent child, * * * a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and any other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the delinquent act[.]

"The statute does not define victim." *In re M.A.*, 11th Dist. No. 2015-L-075, 2016-Ohio-1161, ¶ 16. However, as it relates to that statute, the term "victim" has been defined as "'the person or entity that was the 'object' of the crime.'" *Id.*, quoting *State v. Pietrangelo*, 11th Dist. Lake No.2003-L-125, 2005-Ohio-1686, ¶ 15.

{¶ 34} As noted above, just as he had done at the adjudication hearing before the Warren County Juvenile Court, F.A. testified at the disposition hearing before the Butler County Juvenile Court that two Louis Vuitton purses, a Louis Vuitton wallet, jewelry, and cash were stolen from two vehicles that belonged to him and his wife while those vehicles were parked in the driveway outside of their home in Mason.[2] A.M.P. never objected to this testimony, nor did A.M.P. raise any objection when F.A. was specifically identified as a victim by the state. As a result, although not specifically identified as a victim in the complaint, we find it clear that both F.A. and his wife P.A. were both victims of A.M.P.s delinquent act as they were both clearly the objects of the crime.

{¶ 35} The record also makes clear that F.A. had personal knowledge regarding the stolen property in order to testify as to its value. F.A. testified he was familiar with the two Louis Vuitton purses, the Louis Vuitton wallet, and jewelry taken from their two vehicles, items he estimated had total value of at least $4,400.[3] F.A. also testified that $10,600 in

---

2. It should be noted, P.A. did not testify at the disposition hearing regarding the value of the stolen property because she was out of the country and unavailable.

3. As it relates to the value of the jewelry, F.A. testified that his wife P.A. told him the items actually had a value closer to $4,000 or $5,000, but that "he was being generous by saying two, I said at least two," which was a "lowball number."

cash was stolen from his wife's purses and wallet. As the trier of fact, the Butler County Juvenile Court was free to believe all, part or none of F.A.'s testimony. Moreover, although some of F.A.'s testimony would ordinarily be considered hearsay, "an ordering court is not restricted by the Rules of Evidence, including the prohibition on hearsay, in determining the amount of a restitution order." *State v. Tuemler*, 12th Dist. Warren No. CA2004-06-068, 2005-Ohio-1240, ¶ 17. Therefore, contrary to A.M.P.'s claim otherwise, we find the Butler County Juvenile Court's decision ordering A.M.P. to pay $15,000 in restitution was supported by competent and credible evidence. Accordingly, A.M.P.'s third assignment of error is overruled.

**{¶ 36}** Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.