[Cite as *In re J.N.*, 2024-Ohio-1727.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| J.N. | : | CASE NO. CA2023-09-105 |
| | : | O P I N I O N<br>5/6/2024 |
| | : | |
| | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JV2023-0321; JV2023-0322

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Mark W. Raines, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, J.N., a now 19-year-old man, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for committing acts that would be charged as three counts of first-degree felony rape and one count of third-degree felony gross sexual imposition if committed by an adult. For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

**{¶ 2}** On March 30, 2023, a complaint was filed alleging J.N., born February 22, 2005, was a delinquent child for committing an act that would be charged as one count of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) if committed by an adult. This charge arose after it was alleged J.N., when he was either 16 or 17 years old, had engaged in "sexual conduct" with the victim, J.C., his then nine-year-old cousin, by performing cunnilingus on the child. This charge was alleged to have occurred in Hamilton, Butler County, Ohio sometime between May 8, 2021 and May 8, 2022. This case was given Case No. JV2023-0321.

**{¶ 3}** That same day, another complaint was filed alleging J.N. was a delinquent child for committing two additional counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b), as well one count of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4). These three charges arose after it was alleged J.N., when he was either 13 or 14 years old, had engaged in "sexual conduct" with J.C.'s then under 13-year-old sister, A.C., by twice "engaging in penile-vaginal intercourse" with the child, as well as by engaging in "sexual contact" with the child by "rubbing [her] vagina." These three charges were alleged to have occurred in Hamilton, Butler County, Ohio sometime between February 22, 2018 and January 25, 2020. This case was given Case No. JV2023-0322.

**{¶ 4}** On June 29 and June 30, 2023, both cases, which the trial court had since consolidated, came before the juvenile court for an adjudication hearing. During this hearing, the juvenile court heard testimony from a total of seven witnesses. This included testimony from both of the alleged child victims, J.C. and A.C., as well as from their alleged sexual abuser, their cousin, J.N. At the time of this hearing, J.C. was 11 years old, A.C. was 15 years old, and J.N. was 18 years old. Upon the conclusion of this

- 2 -

hearing, and after taking into consideration the testimony and evidence presented by both parties, the juvenile court issued a decision adjudicating J.N. a delinquent child for committing three counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) and one count of third-degree felony gross sexual imposition in violation R.C. 2907.05(A)(4).

{¶ 5} On August 14, 2023, the matter came before the juvenile court for a dispositional hearing. During this hearing, the juvenile court ordered J.N. to serve a minimum one-year commitment with the Ohio Department of Youth Services ("ODYS"). The juvenile court ordered J.N.'s commitment to ODYS be suspended, however, upon J.N.'s compliance with the juvenile court's orders and probation rules. This included the juvenile court placing J.N. in the Butler County Juvenile Rehabilitation Center where both he and his family were required to "participate fully in the program at the Rehabilitation Center" and "successfully complete the program of rehabilitation as directed by the staff at the center." This also included the juvenile court requiring J.N. to complete the Massachusetts Youth Screening Instrument, a standard mental health screening tool used in juvenile rehabilitation facilities, and an updated sex offender evaluation.

**J.N.'s Appeal and Two Assignments of Error**

{¶ 6} On September 12, 2023, J.N. filed a timely notice of appeal from his adjudication as a delinquent child. Following briefing from both parties, J.N.'s appeal was thereafter submitted to this court for consideration on March 20, 2024. J.N.'s appeal now properly before this court for decision, J.N. has raised two assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN FINDING DEFENDANT TO BE A DELINQUENT CHILD AS TO EACH COUNT AS THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTION OF RAPE AND GROSS

SEXUAL IMPOSITION.

{¶ 9} In his first assignment of error, J.N. raises a challenge to the sufficiency of the evidence presented against him. To support this challenge, J.N. argues the state failed to provide sufficient evidence for the juvenile court to adjudicate him a delinquent child for committing acts against both J.C. and A.C. that would be charged as three counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) if committed by an adult.[1] We disagree.

*Sufficient Evidence Standard of Review*

{¶ 10} The standard of review applied by this court in determining whether a juvenile's delinquency adjudication is supported by sufficient evidence is the same standard as applied in adult criminal cases. *In re E.T.H.*, 12th Dist. Butler No. CA2018-04-064, 2019-Ohio-79, ¶ 13. In adult criminal cases, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Z.G.B.*, 12th Dist. Warren No. CA2016-04-029, 2016-Ohio-7195, ¶ 11. To make this determination, "an appellate court examines the entire record to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt." *In re C.L.*, 12th Dist. Warren No. CA2021-03-021, 2021-Ohio-3782, ¶ 23. "In conducting this review, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *In re B.D.H.*, 12th Dist. Warren No. CA2020-01-001, 2020-Ohio-4879, ¶ 15. "When evaluating the sufficiency of the evidence, this

1. We note that, although referring to both the three counts of first-degree felony rape and the one count of third-degree felony gross sexual imposition for which he was adjudicated a delinquent child within his assignment of error, J.N. challenges only the three first-degree felony rape charges within the body of his appellate brief. J.N., therefore, is not challenging whether there was sufficient evidence to support the juvenile court's decision adjudicating him a delinquent child for committing an act against A.C. that would be charged as one count of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4). We limit our discussion accordingly.

court must 'defer to the trier of fact on questions of credibility and the weight assigned to the evidence.'" *In re A.M.P.*, 12th Dist. Butler No. CA2016-01-020, 2016-Ohio-3546, ¶ 15, quoting *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

*Rape and the Definition of "Sexual Conduct"*

{¶ 11} As noted above, J.N. was adjudicated a delinquent child for committing acts against J.C. and A.C. that would be charged as three counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) if committed by an adult. Pursuant to R.C. 2907.02(A)(1)(b), no person shall engage in "sexual conduct" with another who is not the spouse of the offender, or who is the spouse of the offender but is living separate and apart from the offender, when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The term "sexual conduct" is defined by R.C. 2907.01(A) to include "vaginal intercourse" between a male and female." Vaginal intercourse means "penetration of the vagina with the penis." *State v. Shuster*, 5th Dist. Morgan Nos. CA13AP0001 and 13AP0002, 2014-Ohio-3486, ¶ 5. Penetration, however slight, is sufficient to complete vaginal intercourse. *State v. Rowland*, 12th Dist. Warren No. CA2019-08-084, 2020-Ohio-2984, ¶ 25.

{¶ 12} R.C. 2907.01(A) also defines "sexual conduct" to include "cunnilingus" between persons regardless of sex. "The statute does not define cunnilingus." *State v. Miller*, 3d Dist. Logan 8-19-02, 2019-Ohio-4121, ¶ 21. This court, however, has defined "cunnilingus" to mean "a sexual act committed with the mouth and the female sexual organ." *State v. Rudd*, 12th Dist. Clermont No. CA86-05-036, 1987 Ohio App. LEXIS 5982, *60 (Mar. 2, 1987). Given this definition, it is now well established that the law "does not require penetration to complete the act of cunnilingus[.]" *State v. Anderson*, 8th Dist. Cuyahoga No. 112514, 2024-Ohio-843, ¶ 38. "The law requires no further activity to constitute cunnilingus beyond the placing of one's mouth on the female's

vagina." *State v. Steeg*, 9th Dist. Summit No. 17930, 1997 Ohio LEXIS 1736, *9 (Apr. 30, 1997). The Ohio Supreme Court has, in fact, specifically held that "[p]enetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 86, citing *State v. Ramirez*, 98 Ohio App.3d 388, 393 (3d Dist.1994); and *State v. Bailey*, 78 Ohio App.3d 394, 395 (1st Dist.1992).

*Sufficient Evidence to Support J.N.'s Adjudication for Twice Raping A.C.*

**{¶ 13}** J.N. initially argues there was insufficient evidence to support the juvenile court's decision adjudicating him a delinquent child for twice raping A.C. via vaginal intercourse. This is because, according to J.N., "the state offered no physical evidence that vaginal intercourse occurred in any of the alleged incidents." However, while physical evidence certainly would have strengthened the state's case, the introduction of physical evidence by the state to corroborate A.C.'s testimony was not required to prove beyond a reasonable doubt that J.N. had, in fact, twice raped A.C. via vaginal intercourse. *See State v. Pemberton*, 9th Dist. Lorain No. 05CA008660, 2005-Ohio-4659, ¶ 19 ("[w]hile physical evidence would strengthen the reliability of [the victim's] statements, such evidence is not required"); *see also State v. Thomas*, 2d Dist. Montgomery No. 27362, 2018-Ohio-4345, ¶ 25 ("physical evidence is not required to support a conviction for rape"). This is because, as this court has stated previously, "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony be corroborated [by physical evidence] as a condition precedent to conviction." *State v. Scarborough*, 12th Dist. Warren No. CA91-01-012, 1991 Ohio App. LEXIS 5533, *6 (Nov. 18, 1991).

**{¶ 14}** It is instead well established that the testimony of an alleged rape victim, if believed, is sufficient to support each element of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b). *State v. Woodward*, 12th Dist. Butler No. CA2011-02-036, 2011-

Ohio-6019, ¶ 23; *see State v. K.A.C.*, 10th Dist. Franklin No. 23AP-86, 2024-Ohio-1139, ¶ 55 (noting that, under Ohio law, "a rape victim's testimony alone, if believed, is enough evidence for a conviction"); and *In re C.S.*, 8th Dist. Cuyahoga No. 112823, 2024-Ohio-1063, ¶ 29 ("[t]here is no requirement that physical evidence be introduced in order to sustain a conviction or adjudication" for the charge of rape); *see also In re B.D.H.*, 2020-Ohio-4879 at ¶ 18 ("[a] victim's testimony is sufficient to establish that sexual conduct occurred"). This makes sense when considering "'not all rape victims exhibit signs of physical injury.'" *Id.*, citing *State v. Reinhardt*, 10th Dist. Franklin No. 04AP-116, 2004-Ohio-6443, ¶ 29. This is particularly true in cases such as this where, given A.C.'s delayed disclosure of J.N.'s sexual abuse perpetrated against her, there was no corroborating physical evidence available to be collected. Therefore, because the introduction of corroborating physical evidence by the state was not required to prove beyond a reasonable doubt that J.N. had, in fact, twice raped A.C. via vaginal intercourse to support his adjudication as a delinquent child, J.N.'s first argument lacks merit.

*Sufficient Evidence to Support J.N.'s Adjudication for Raping J.C.*

{¶ 15} J.N. next argues there was insufficient evidence to support the juvenile court's decision to adjudicate him a delinquent child for raping A.C.'s younger sister, J.C., via cunnilingus.[2] This is because, according to J.N., the testimony offered by the then 11-year-old J.C. accusing him of licking her "private part" with his tongue failed to establish the act of cunnilingus as that term is used to define "sexual conduct" under R.C. 2907.01(A). Therefore, because the state failed to follow up and make clear what J.C.

_____

2. J.N. also argues that there was insufficient evidence to support the juvenile court's decision adjudicating him a delinquent child for raping J.C. via cunnilingus because her testimony did not establish that penetration occurred. However, as stated previously, the Ohio Supreme Court has specifically held that "[p]enetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 86, citing *State v. Ramirez*, 98 Ohio App.3d 388, 393 (3d Dist.1994); and *State v. Bailey*, 78 Ohio App.3d 394, 395 (1st Dist.1992). To the extent J.N. claims otherwise, such argument lacks merit.

meant by her use of the term "private part," J.N. argues that this court should reverse the juvenile court's decision adjudicating him a delinquent child for raping J.C. via cunnilingus.

{¶ 16} But, as a simple review of the record reveals, J.C. did not simply testify and accuse J.N. of licking her "private part." J.C. also testified that the "private part" she was referring to was the part of her body that she used to "pee." J.C. additionally testified that when J.N. licked her "private part" that it made her body feel "[t]ingling." This is in addition to J.C. testifying that after J.N. licked her "private part" that J.N. told her to lick "his private," an order that J.C. testified she refused stating, "no, that's nasty." Accordingly, while J.C.'s testimony certainly could have been more explicit, it is nevertheless clear that J.C. testifying and accusing J.N. of licking her "private part" with his tongue meets the definition of cunnilingus as that term is used to define "sexual conduct" under R.C. 2907.01(A). For these reasons, J.N.'s second argument challenging the juvenile court's decision to adjudicate him a delinquent child for raping J.C. via cunnilingus also lacks merit.

*Sufficient Evidence Provided Despite Inconsistent Testimony*

{¶ 17} J.N. additionally argues that there was insufficient evidence to support the juvenile court's decision adjudicating him a delinquent child for committing any of three counts of first-degree felony rape because the testimony from both child victims, J.C. and A.C., "either specifically indicated there was no penetration or offered conflicting or unclear testimony as to whether there was penetration." However, upon review, we find nothing unclear about either J.C.'s or A.C.'s testimony regarding each of those three alleged rapes. For example, in addition to J.C.'s testimony set forth above, A.C. testified on direct examination that J.N. twice raped her by either putting his penis "inside" her vagina or trying to put his penis "inside" her vagina, something which A.C. testified either "hurted" her vagina or was "hurting too much" for J.N. to insert his penis into her vagina

- 8 -

any further.  A.C. testified that J.N. did this to her—meaning that J.N. raped her via vaginal intercourse—"a lot" and that during each of the incidents in which J.N. had raped her that her "body hurted" when J.N. put his penis "in" her vagina.

{¶ 18}  The record also indicates that following A.C.'s cross-examination, the state on redirect examination asked A.C., "I want to clarify that, umm… because I remember you saying that he tried to insert… he tried to put his penis inside you…"  To this, A.C. interjected and said, "That's in, as in trying and putting, yeah."  The exchange between the state and A.C. then continued as follows:

> Q.  So could you describe that, could you describe that a little bit more…
>
> A.  He would try…
>
> Q.  Try to…
>
> A.  Yeah…
>
> Q.  And what happened?
>
> A.  And it would go in and then it would come right out because it hurt.
>
> Q.  Okay.  Okay.  So umm… his penis was inside your vagina?
>
> A.  Yes.

A.C. also testified that when J.N. penetrated her vagina with his penis that his penis did not go that far inside, but that penetration of her vaginal opening had nevertheless occurred.

{¶ 19}  Under these circumstances, and when viewing the evidence in a light most favorable to the state, something this court must do when analyzing whether a child's adjudication as a delinquent child was supported by sufficient evidence, *see In re Booker*, 133 Ohio App.3d 387, 389-390 (1st Dist.1999), we find that any rational trier of fact could have found the essential elements of three counts of first-degree felony rape in violation

of R.C. 2907.05(A)(1)(b) had been proven by the state beyond a reasonable doubt. Therefore, while both J.C.'s and A.C.'s testimony certainly could have been more specific as to what occurred during each of the incidents in which they alleged J.N. had raped them, the juvenile court's decision adjudicating J.N. a delinquent child for raping J.C. once via cunnilingus and A.C. twice via vaginal intercourse was nevertheless supported by sufficient evidence. Accordingly, finding no merit to any of the arguments advanced by J.N. herein, J.N.'s first assignment of error lacks merit and is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED IN FINDING DEFENDANT TO BE A DELINQUENT CHILD AS TO EACH COUNT AS THE DECISION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN THE CONVICTION OF RAPE AND GROSS SEXUAL IMPOSITION.

{¶ 22} In his second assignment of error, J.N. raises a challenge to the manifest weight of the evidence offered against him by the state. To support this challenge, J.N. argues the manifest weight of the evidence presented by the state does not support the juvenile court's decision to adjudicate him a delinquent child for committing acts against J.C. and A.C. that would be charged as three counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) and one count of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4) if committed by an adult. We again disagree.

*Manifest Weight of the Evidence Standard*

{¶ 23} Just as with the sufficiency of the evidence standard of review, the standard of review employed by this court in determining whether a juvenile's adjudication as a delinquent child was against the manifest weight of the evidence is the same standard as used in adult criminal cases. *In re D.T.W.*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317, ¶ 32. When reviewing adult criminal cases on manifest weight grounds, this

court examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *State v. A.N.C.*, 12th Dist. Warren No. CA2017-02-012, 2018-Ohio-362, ¶ 9. Therefore, to determine whether a juvenile's adjudication as a delinquent child was against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed and a new adjudicatory hearing be ordered. *In re D.J.*, 12th Dist. Warren No. CA2019-02-010, 2020-Ohio-1317, ¶ 17. However, while this court is tasked with considering the credibility of the witnesses, "a determination regarding the witnesses' credibility is primarily for the trier of fact to decide." *In re T.I.*, 12th Dist. Clermont No. CA2023-09-065, 2024-Ohio-292, ¶ 19. Accordingly, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a juvenile's adjudication as a delinquent child on manifest-weight grounds only in extraordinary circumstances when the evidence presented weighs heavily in favor of acquittal. *In re A.N.C.*, 12th Dist. Warren No. CA2017-02-012, 2018-Ohio-362, ¶ 9.

*Rape, Gross Sexual Imposition, and the Definition of "Sexual Contact"*

{¶ 24} As noted above, in addition to the three counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b) against both J.C. and A.C., J.N. was also adjudicated a delinquent child for committing acts against A.C. that would be charged as one count of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4) if committed by an adult. Pursuant to R.C. 2907.05(A)(4), no person shall have "sexual contact" with another, not the spouse of the offender, when "[t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

R.C. 2907.01(B) defines the term "sexual contact" to mean "any touching of an erogenous zone of another," including the buttock, "for the purpose of sexually arousing or gratifying either person." "Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

*Manifest Weight Supports J.N.'s Adjudication in Both Cases*

{¶ 25} J.N. initially argues the juvenile court's decisions adjudicating him a delinquent child was against the manifest weight of the evidence because J.C.'s and A.C.'s testimony was "inconsistent" with certain prior statements they had made regarding the abuse that they alleged J.N. had perpetrated against them. This includes, among others, the statement that A.C. had previously provided to a social worker. However, it is well established that "'[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 34, quoting *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. Therefore, rather than this court, it was the juvenile court, as the trier of fact, that "considers any inconsistencies in the witnesses' testimony and resolves them accordingly, believing all, part, or none of each witnesses' testimony." *State v. Singh*, 12th Dist. Butler No. CA2021-12-158, 2022-Ohio-3385, ¶ 67. Here, given the juvenile court's adjudicatory decision in this case, the juvenile court clearly found both J.C. and A.C.'s testimony credible, whereas J.N.'s testimony was not. We see nothing improper

with respect to the juvenile court's credibility determinations that would require this court's intervention. This holds true even though both J.C.'s and A.C.'s testimony was somewhat inconsistent with that of their prior statements they had made regarding the abuse that they alleged J.N. had perpetrated against them.

**{¶ 26}** Moreover, even though we agree that both J.C.'s and A.C.'s testimony certainly could be considered somewhat inconsistent with that of their prior statements, "[i]nconsistencies in the evidence alone do not mean that a decision is against the manifest weight of the evidence." *State v. Gregory*, 12th Dist. Clermont No. CA2022-10-070, 2023-Ohio-1700, ¶ 16. So, while J.C.'s and A.C.'s testimony may not have been entirely consistent with their prior statements, the juvenile court nevertheless heard all the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible. *See State v.* Wright, 12th Dist. Fayette No. Ca2017-10-021, 2018-Ohio-1982, ¶ 33. This necessarily included the testimony of both alleged child victims, J.C. and A.C. Therefore, although J.N. would prefer it to be different, simply because J.C. and A.C. may have provided testimony that was somewhat inconsistent to that of their prior statements, including those statements that A.C. had made to a social worker, that does not serve as a proper basis upon which this court will disturb the juvenile court's decision to adjudicate him a delinquent child. J.N.'s argument otherwise lacks merit.

*Opportunity Surrounding Allegations is a Credibility Determination*

**{¶ 27}** J.N. also argues the juvenile court's decision was against the manifest weight of the evidence because "the opportunity for J.N. to commit the alleged offenses was not there, as at all times of the alleged offenses other people were in the vicinity, able to hear or see what was going on." Yet, while J.N. claims neither J.C.'s nor A.C.'s testimony was believable given the physical proximity of the other people in the vicinity in which each of the alleged incidents of sexual abuse occurred, the juvenile court, as the

trier of fact, determined that it was. This was not error. It is the juvenile court, not this court, that is in the best position to determine the credibility of the witnesses and determine the weight to be given to the evidence. *In re A.V.*, 12th Dist. Warren No. CA2023-08-067, 2024-Ohio-1091, ¶ 36. That the juvenile court found J.C.'s and A.C.'s testimony regarding each of the alleged incidents of sexual abuse credible, despite the presence of other people in the area when each of those alleged incidents purportedly occurred, does not render the juvenile court's decision to adjudicate J.N. a delinquent child improper. Therefore, although there may be some issues regarding both J.C.'s and A.C.'s credibility, because the juvenile court's decision to adjudicate J.N. a delinquent child was not against the manifest weight of the evidence, J.N.'s second argument also lacks merit.

*Protestations of Innocence Deemed Not Believable*

{¶ 28} J.N. further argues the juvenile court's decision was against the manifest weight of the evidence because he has "consistently denied the allegations: first to family, then to the detective and then under oath after waiving his right to remain silent." However, while it may be true that J.N. had consistently denied the allegations that both child victims had levied against him, it is well established that "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact or because the trier of fact believed the testimony of the state's witnesses." *State v. Jennings*, 12th Dist. Preble No. CA2023-03-003, 2024-Ohio-383, ¶ 26. That is to say, "[c]onvictions are not against the manifest weight of the evidence simply because the trier of facts believed the state's witnesses over the defense." *State v. Gregory*, 12th Dist. Clermont No. CA2022-10-070, 2023-Ohio-1700, ¶ 18. This is because, as the trier of fact, the juvenile court judge "was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist.

Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. Therefore, finding no merit to any of the arguments advanced herein, J.N.'s second assignment of error challenging his adjudication as a delinquent child as being against the manifest weight of the evidence also lacks merit and is overruled.

**Conclusion**

{¶ 29} For the reasons outlined above, and finding no merit to either of J.N.'s two assignments of error, J.N.'s appeal from the trial court's decision adjudicating him a delinquent child for committing acts that would be charged as three counts of first-degree felony rape and one count of third-degree felony gross sexual imposition if committed by an adult is denied.

{¶ 30} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.